HERBERT G. INGRAM & others[1] *vs.* SONITROL SECURITY
SYSTEMS OF WORCESTER, INC. & another.[2]

Worcester. January 13, 1981. — April 30, 1981.

Present: ARMSTRONG, ROSE, & GREANEY, JJ..

*Landlord and Tenant*, Extension of lease, Renewal of lease, Counsel
fees. *Damages*, Counsel fees.

A provision in a lease for an original term of three years granting the
    lessee "the option to renew the lease," considered in light of the
    negotiations between the parties concerning the proposed renewal,
    constituted an option to renew rather than an option to extend the
    lease and, consequently, a letter sent by the lessee during the negotia-
    tions expressing an intent to exercise the renewal option did not create
    a lease after the expiration of the original term. [756-758]
Under a provision in a lease for the recovery of reasonable costs and ex-
    penses in the event that "the services of an attorney shall be required to
    enforce the obligations of the Tenant or Landlord hereunder, whether
    or not this lease shall be terminated," the lessee was not entitled to
    recover attorney's fees incurred in an action by the lessor seeking to
    establish an extension of the lease upon expiration of the original term.
    [758]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 20, 1978.

The case was heard by *Meagher, J.*

*David A. Talman* for the plaintiffs.
*Michael J. Michaeles* for the defendants.

ROSE, J. The plaintiff Herbert G. Ingram (Ingram) and
his partners, doing business as 340-390 Main Street Associ-
ates, appeal from a judgment of the Superior Court dismiss-

[1] William Roberts, Barry Krock and Beverly Gold, partners of Herbert
G. Ingram.

[2] Herbert Wischnia.

ing their complaint for declaratory judgment against the defendant Sonitrol Security Systems of Worcester, Inc. (Sonitrol) and its president, Herbert Wischnia (Wischnia). That complaint had asked the court to determine that Sonitrol had exercised its "option to renew" under a lease executed by the parties in 1975, and, therefore, was liable for rent under the renewed lease. Sonitrol appeals from the Superior Court's judgment dismissing its counterclaim for attorney's fees and for damages under c. 93A, § 11.[3]

In January, 1975, the lessor Ingram and the lessee Sonitrol entered into a lease commencing April 1, 1975, and terminating April 1, 1978 (1975 lease). The lease in part granted Sonitrol the option to renew the lease on rooms 226-227 (option #2) for an additional period of ten years commencing April 1, 1978.[4] The option provision required Sonitrol to give Ingram ninety days' written notice of its intention to exercise the option. Further, Ingram was required to inform Sonitrol of the actual rental price for the renewal period prior to the commencement of the new period. The trial judge found that as early as the summer and fall of 1977 the parties discussed the amount of monthly rental, the amount of space, and the cost of renovating the leased premises. In mid-March of 1978, Ingram informed Wischnia, the president of Sonitrol, that in order to con-

---

[3] In its brief Sonitrol argues that it is entitled to relief under G. L. c. 93A, § 11, if this court concludes that the "option to renew" was exercised. In light of the conclusion in this case we need not reach this question.

[4] In addition to option #2, the lease included three other renewal options. Option #2 provided: "Landlord hereby grants the tenant the option to renew the lease on rooms 226-227 starting April 1, 1978 for an additional period of ten years. The terms and conditions of the option period shall be the same as the initial lease except that the rental will be $475.00 per month or $5700.00 annually plus any cost of living adjustment from December 31, 1974 through April 1, 1978. Tenant shall give landlord ninety day written notice of his intention to exercise said option and landlord will then compute the rental adjustment as a result of the cost of living period referred to and inform the tenant of the actual rental prior to the tenant taking the space for a renewal term in 1978."

tinue talks a writing would be required indicating that Sonitrol was serious about negotiating for further occupancy. In response to Ingram's request Wischnia, on behalf of Sonitrol, delivered to Ingram in mid-March a letter, dated January 2, 1978, indicating Sonitrol's intention to exercise renewal option #2 of the lease. On April 19, 1978, after the 1975 lease expired, Ingram sent Wischnia a letter in which he indicated that he was enclosing a new lease to go into effect on May 1, 1978, "rather than . . . amend[ing] the existing lease."[5] Additionally, the letter indicated that the new lease included a rental payment schedule, provided for the leasing of two additional rooms, and set forth certain agreed renovations. In a May 19, 1978, letter to Wischnia, Ingram again attempted to clarify the lease situation. On June 5, 1978, Wischnia sent Ingram a letter indicating that further negotiations would be necessary in order to eliminate confusion which still existed as to the proposed lease. Over three months later Wischnia informed Ingram by letter that Sonitrol intended to vacate the leased premises on or about November 1, 1978. Not until November 9, 1978, after Sonitrol vacated the premises, did Ingram inform Wischnia by letter that he intended to hold Wischnia[6] and Sonitrol liable for all rents due. According to Ingram, the letter dated January 2, 1978, from Sonitrol was sufficient to extend the lease for an additional ten years.

Under Massachusetts law a distinction is made between an option to renew and a tenant's right to extend a lease. *Shannon* v. *Jacobson*, 262 Mass. 463, 465-466 (1928). An option to renew requires the execution "of a new lease . . . , or a formal extension of the existing lease, or something equivalent thereto." *Leavitt* v. *Maykel*, 203 Mass. 506, 509 (1909). *O'Brien* v. *Hurley*, 325 Mass. 249, 251 (1950). In contrast, the extension of an existing lease does not contemplate the execution of a new lease but requires that the

---

[5] After the 1975 lease expired rental bills were sent monthly to Sonitrol.

[6] Wischnia argues on appeal that he was not personally liable under the lease. We need not reach this issue due to the conclusion in this case.

tenant comply with the terms of the option to extend the lease. *Straus* v. *Shaheen, Inc.*, 310 Mass. 646, 648 (1942).[7]

Ingram contends that the option clause in the 1975 lease should be construed as an option to extend and that the letter dated January 2, 1978, from Sonitrol was timely notice and sufficient to extend the lease.[8] We disagree.

The language of the option clause as well as the evidence indicating that the parties were involved in negotiations for over one year persuades us that the parties intended to execute a new lease and did not intend to merely extend the 1975 lease. The record indicates that letters were exchanged between the parties as late as June, 1978, in an attempt to negotiate a new lease. Attached to an April 19, 1978, letter from Ingram to Wischnia was a copy of a "new lease" which Ingram indicated covered "all the points we discussed during our last meeting" and which Ingram conceded provided for a "slightly different" rental payment schedule than discussed. Further, the fact that the renewal clause included the phrase "option to renew" is at least some evidence of the intent of the parties to renew and not extend the lease. See *Gibbs Realty & Inv. Corp.* v. *Carvel Stores*

---

[7] An extension has been found where: after the original lease expired the tenant, without objection, paid the rent increase stipulated in the expired lease (*Stone* v. *St. Louis Stamping Co.*, 155 Mass. 267, 271 [1892]); a lease provided for the automatic extension of the existing lease in the event the lessee did not give three months' notice of termination (*Dix* v. *Atkins*, 130 Mass. 171, 172 [1881]); the option clause provided that "all the terms, covenants, conditions and agreements of this lease shall remain in full force and effect during the renewal term period" (*Gibbs Realty & Inv. Corp.* v. *Carvel Stores Realty Corp.*, 351 Mass. 684, 685 [1967]); the phrase "right to an extension" was included in an option clause that set the rent increase for the extension period at no more than ten per cent of the rent for the final year of the existing lease (*Mutual Paper Co.* v. *Hoague-Sprague Corp.*, 297 Mass. 294, 300 [1937]).

[8] Ingram contends that the trial judge erroneously ruled that the letter dated January 2, 1978, was not effective notice as required under the lease. Under our analysis we need not decide whether the trial judge's ruling was correct. Even if the letter was effective notice, the fact that there was no subsequent execution requires the conclusion that the option to renew was not exercised.

*Realty Corp.*, 351 Mass. 684, 686 (1967). When such an elaborate negotiating process is considered together with the inclusion of the phrase "option to renew" in the option clause, it can only be concluded that the parties did not intend simply to extend the existing lease but rather intended to execute a new lease. See *Mutual Paper Co.* v. *Hoague-Sprague Corp.*, 297 Mass. 294, 300 (1937).

In the circumstances of this case Sonitrol became a tenant at will at the expiration of the 1975 lease and was, therefore, only required to give appropriate notice of its intention to vacate.

Additionally, Sonitrol contends that it is entitled to costs and expenses under Section XXV[9] of the 1975 lease. We conclude that the provision is inapplicable to the instant case. Section XXV is concerned with costs and expenses incurred by one party in enforcing the obligations of the other party. This case is not one in which Sonitrol is enforcing any obligations owed by Ingram arising under the tenancy.

We find no basis for Ingram's contention that Sonitrol's appeal of the lower court's dismissal of its counterclaim under G. L. c. 93A was frivolous, warranting this court to award costs and interest under G. L. c. 211A, § 15.[10]

Since the parties are entitled to a declaration of their rights we vacate the judgment of dismissal. Judgment shall be entered declaring as follows: that the 1975 lease terminated as of April 1, 1978; Sonitrol was a tenant at will after April 1, 1978, and as such was liable for unpaid rent for October, 1978; Sonitrol is entitled to the difference between the security deposit held by Ingram and the amount owed by Sonitrol

---

[9] Section XXV of the 1975 lease provided:

"In the event that the services of an attorney shall be required to enforce the obligations of the Tenant or Landlord hereunder, whether or not this lease shall be terminated, Tenant or Landlord agrees to pay the reasonable costs and expenses thereby incurred by Landlord or Tenant."

[10] Ingram argued that relief was warranted under G. L. c. 211, § 10. The appropriate statutory provision applicable to appeals before the Appeals Court is G. L. c. 211A, § 15.

for October, 1978, rent; Sonitrol is not entitled to costs and expenses under Section XXV of the 1975 lease.

*So ordered.*