NORTHERN ASSOCIATES, INC., & another[1] *vs.* THOMAS M. KILEY[2] & others.[3]

No. 00-P-921.

Essex. May 17, 2002. - April 30, 2003.

Present: GELINAS, DUFFLY, & KAFKER, JJ.

*Real Property,* Lease. *Contract,* Lease of real estate, Performance and breach. *Landlord and Tenant,* Lease as contract, Constructive eviction, Services furnished by landlord, Attorney's fees. *Emotional Distress. Evidence,* Parol evidence.

In a civil action arising out of a breach of a commercial lease agreement, in which judgment entered for the defendants on their counterclaim for declaratory judgments and for the plaintiffs on their claim of breach of the lease, the judge's award of attorney's fees and costs to both parties was not error, where the judge's findings and conclusions to the effect that the defendants had incurred attorney's fees, regardless whether the defendants had been billed for such services, were not plainly wrong [876-878]; where the grant of summary judgment in favor of the defendants on one count and a directed verdict in their favor on two other counts supported the conclusion that, as to those counts, the defendants prevailed, and the lease provided that a party could recover attorney's fees if it prevailed [878-881]; where the judge's allocation of fees to the parties was not unreasonable, based on the judge's reliance on the pleadings and her firsthand experience at trial [881-883]; and where the judge's finding that the plaintiffs had improperly prolonged the litigation was amply supported by the record [883].

In a civil action arising out of a breach of a commercial lease agreement, no error arose from the judge's dismissal of an individual plaintiff's claim for intentional infliction of emotional distress in response to the defendants' motion in limine to exclude evidence supporting the claim, where the judge offered the individual plaintiff ample time and opportunity to respond to the defendants' arguments. [883-884]

The judge in a civil action arising out of a breach of a commercial lease agreement did not err in allowing the defendants' motion for a directed verdict, made at the close of the plaintiffs' evidence, on the plaintiffs'

---

[1] Richard Benson.

[2] Individually and as trustee of Frye Village Realty Trust.

[3] Daniel P. Kiley, III, individually and as trustee of Frye Village Realty Trust; and Frye Village Realty Trust.

claim of constructive eviction, where, as a matter of law, the disruptions to which the plaintiffs' witnesses testified were not sufficiently substantial to constitute a constructive eviction. [884-885]

In a civil action arising out of a breach of a commercial lease agreement, the judge correctly granted the defendants' motion for a directed verdict on the plaintiffs' breach of contract claim for lost profits allegedly caused by the disruption of its business due to the defendants' actions, where the plaintiffs' witness testified only to a vague knowledge of lost clients and could not quantify the loss, with the result that any finding of causation with regard to this claim based on the plaintiffs' evidence would be purely speculative. [885-886]

In a civil action arising out of a breach of a commercial lease agreement, the judge did not err in excluding parol evidence regarding the plaintiffs' right to air conditioning, where nothing in the plaintiffs' evidence on this point demonstrated that an ambiguity existed as to whether the landlord's obligation to provide electricity under the lease necessarily included air conditioning. [886-887]

CIVIL ACTION commenced in the Superior Court Department on June 17, 1996.

The case was heard by *Howard J. Whitehead*, J., on a motion for partial summary judgment; a motion to dismiss was heard by *Nancy S. Merrick*, J., the case was tried before her, and motions for attorney's fees and costs were heard by her.

*Howard M. Brown* for the plaintiffs.

*Thomas B. Drohan* for the defendants.

DUFFLY, J. In August, 1994, Northern Associates, Inc., and Richard Benson (the plaintiffs or, collectively, Northern) entered into an agreement to lease a portion of the third floor of a commercial building located at 342 North Main Street, Andover. In February of 1995, the original owner-lessor conveyed the property to the defendant Frye Village Realty Trust. The defendant trustees, in turn, approached Northern about vacating the premises. Northern declined the offer. The trustees, thereafter, began renovations on the second floor of the property, which caused temporary disruption of some of the services to Northern's leased premises, as well as dust and debris. In the summer of 1995, the trustees did not provide air conditioning to Northern's premises, taking the position that it was not required under the lease.

Northern brought suit as a consequence of events arising from these renovations, claiming the trustees' actions resulted in

breaches of the lease agreement (Count I), intentional infliction of emotional distress (Count II), interference with advantageous contractual relations (Count III), violation of G. L. c. 93A, § 11 (Count IV), and constructive eviction (Count V). Northern also sought, in Count VI, preliminary and permanent injunctive relief. The trustees, by way of counterclaim, sought declaratory judgments as to the amount of space that Northern was entitled to occupy under the terms of the lease, and whether Northern was entitled to air conditioning, maintenance and cleaning of its premises, and elevator services.

Prior to trial, a judge other than the trial judge entered partial summary judgment for the trustees on Count III. The trial judge dismissed Count II immediately prior to trial, and at the close of the evidence entered a directed verdict for the trustees on Counts IV and V. Following trial, judgment entered for Northern as to Count I; Northern's claim for injunctive relief (Count VI) was denied by the trial judge as to all claims except elevator service, and judgment entered substantially for the trustees on their counterclaim for declaratory judgments.[4] Both sides sought an award of attorney's fees and costs.

Northern challenges as insufficient the $5,000 it was awarded on its claim for attorney's fees; challenges as erroneous the award of $100,000 in attorney's fees to the trustees[5]; appeals the dismissal of and entry of directed verdicts on several of its claims; and argues the trial judge erred in excluding parol evidence regarding its right to air conditioning.

1. *Attorney's fees.* Northern and the trustees sought to recover attorney's fees and costs under the lease agreement,[6] which provides, at § 10.05, as follows:

"If, on account of any breach or default by either

---

[4]The order "declares that the elevator is part of the common area," entitling Northern to its access and use.

[5]Northern sought $139,987.50 in attorney's fees and $16,123.66 in costs, and was awarded attorney's fees in the amount of $5,000 and $578 in costs. The trustees sought $301,816.05 in attorney's fees and $11,668 in costs, and were awarded $100,000 in fees and $2,467 in costs.

[6]The trustees additionally sought attorney's fees and costs pursuant to G. L. c. 231, § 6F. With respect to this ground for its request for attorney's fees, the judge stated, "the Court does not find that a hearing is warranted and will take no further action on this matter."

Landlord or Tenant of their respective obligations under this Lease, it shall become necessary to employ an attorney to enforce or defend any of its rights or remedies hereunder, and should such party prevail, it shall be entitled to reasonable attorneys fees incurred."

We discuss below Northern's several challenges to the fee awards.

a. *Fees were not "incurred."* Northern first claims that the trustees were not contractually entitled to an award of attorney's fees because, although represented by legal counsel throughout the proceedings, the trustees had not, as of the date of the request for an award of fees and costs, been billed for or paid such fees and costs, and there was no agreement that such fees and costs would be paid. We reject Northern's claim and conclude that *Lincoln St. Realty Co.* v. *Green*, 374 Mass. 630 (1978), on which Northern principally relies, is inapposite. In *Lincoln*, a landlord commenced an action to evict an indigent tenant who was represented by a legal services organization that did not charge indigent clients for its services. After prevailing in the action, the tenant moved for an award of attorney's fees pursuant to provisions in the lease agreement that allowed recovery for reasonable attorney's fees "incurred" by a prevailing tenant. The court determined that " 'incurred' in this contractual context means 'personally obligated to pay.' " *Id.* at 632. The tenant's claim to an award for fees was rejected on the ground that the tenant was not personally liable for any attorney's fees. *Id.* at 633. See *Colonial Estates Assocs.* v. *Montagna*, 18 Mass. App. Ct. 972, 972-973 (1984).

The lease agreement in the present case provides for recovery of "reasonable attorney[']s fees incurred." Attorney's fees are "incurred" when a party renders himself liable to pay for such fees. See Oxford English Dictionary 1410 (Compact ed. 1971) ("incur" means "to render oneself liable to"); Webster's Universal Unabridged Dictionary 927 (2d ed. 1979) ("incur" means "to bring upon oneself"). The affidavits of the trustees' attorneys, specifying the nature of the services, the time expended and the hourly rate, establishes that services of private legal counsel had been engaged and provided, and supports the inference that the trustees were under an obligation to pay for their services.

We reject Northern's argument that evidence that the trustees had not yet been billed for or paid their attorneys, and had no agreement to do so,[7] requires the conclusion that the trustees also were under no obligation to pay their attorneys. Northern points to nothing in the record that suggests the existence of an agreement between the trustees and their attorneys that the services would be rendered free of charge regardless of outcome.[8]

In these circumstances, the question of whether legal fees were "incurred" is informed by *United States Trust Co.* v. *Herriott*, 10 Mass. App. Ct. 313 (1980), where we rejected as frivolous the defendants' argument that the plaintiff had not incurred any expenses because its attorneys had not billed or received any payment for their services. *Id.* at 321. Incurring a fee is to be distinguished from paying a fee. Cf. *Penney* v. *First Natl. Bank*, 385 Mass. 715, 723 (1982) (promissory note provided that plaintiff would "would pay all costs of collection and attorney's fees *paid or incurred* by the bank" [emphasis supplied]). Whether a party ultimately pays the fees for which he has obligated himself, or whether the attorney seeks to collect on the outstanding indebtedness, is not determinative. The judge's findings and conclusions to the effect that the trustees incurred attorney's fees are not plainly wrong.

b. *Prevailing party.* Northern claims that, even if attorney's fees were incurred by the trustees, they are not entitled to an award because they did not "prevail." We first note that any reliance on cases discussing the meaning of the phrase "prevailing party" in the context of a statutory framework such as workers' compensation or civil rights is misplaced. "There is no basis for relating [§ 10.05 of the lease agreement] to these specialized statutes." *Bardon Trimount, Inc.* v. *Guyott*, 49 Mass. App. Ct. 764, 779 (2000). See *Bird* v. *Bird*, 24 Mass. App. Ct.

---

[7]In support of its argument that the trustees did not "incur" any fees in the defense of this action, Northern relies on the deposition of Thomas M. Kiley. Responding to the question, "What attorneys have you paid to represent your interests in this case?," Kiley answered, "I haven't paid anyone so far." The questioning continued, with Kiley answering in the negative to questions whether he had a fee agreement with any of his attorneys or had agreed to pay them.

[8]There is also nothing in the record to suggest that the obligation was limited by a contingency fee agreement to a percentage of recovery. See *Winthrop Corp.* v. *Lowenthal*, 29 Mass. App. Ct. 180, 186 (1990).

362, 365 (1987) ("In certain kinds of cases, [the achievement] of less than ultimate goals . . . may earn one status as a prevailing party for purposes of recovery of legal fees under [civil rights statutes]. Those cases, however, have a 'private attorney general' ingredient which is absent from actions based on private contracts" [citations omitted]).

Whether the trustees are entitled to an award of fees is governed by the terms of the parties' contract. The lease agreement provides that a party may recover attorney's fees "[i]f, on account of any breach or default by either Landlord or Tenant of their respective obligations under this Lease, it shall become necessary to employ an attorney to enforce or defend any of its rights or remedies hereunder, and . . . such party prevail[s]." Where the language of a contract is unambiguous, the words will be given their plain or well-established meaning. See *Haverhill* v. *George Brox, Inc.*, 47 Mass. App. Ct. 717, 720 (1999).

Section 10.05 of the lease speaks broadly in terms of a party employing an attorney who prevails in enforcing or defending "any of its rights or remedies" under the lease. This provision plainly contemplates that one or both parties may prevail in the enforcement of rights or remedies under the lease as well as in the defense of a claimed breach or default of the lease. The parties here sought to enforce several different rights under the lease, including rights to common areas, heat, air conditioning, maintenance of common areas, and square footage of the leased premises — Northern asserting its claims in multiple counts and the trustees asserting two counts for affirmative relief in its counterclaim.[9] In addition, the trustees were compelled to defend against Northern's claims.

The trustees have not appealed the award to Northern and it appears that Northern, which was awarded at least a partial judgment in connection with its breach of contract claim[10] and

---

[9]This is consistent with the requirement in our rules that all claims for relief arising out of the same occurrence be raised in a single action. See Mass.R. Civ.P. 13(a), as amended, 423 Mass. 1405 (1996).

[10]With respect to the questions put to the jury on the issue of breach, the jury concluded that the trustees had failed to provide heat to the premises, interfered with Northern's business operations, interfered with Northern's quiet use and enjoyment of the third-floor premises, and failed to clean and maintain the third-floor common areas.

recovered $18,700 in damages, was correctly identified as the prevailing party in connection with Count I.

The judge's findings reflect that the award of fees to the trustees was in connection with their defense of Northern's claims that were "on account of a breach or default" under the lease, and in connection with the trustees' successful counterclaim seeking a declaratory judgment that limited the right of Northern to occupancy of 2100 square feet of the third floor. We will assume that the award was not intended to include fees incurred in connection with the emotional distress claim (Count II).[11] See, e.g., *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 828-829 (1982) (contract provision allowing recovery for fees and expenses incurred by either party as a result of actions or proceedings brought to determine or enforce either party's rights under a contract, or to enforce collection of payments required under the contract, did not permit the defendant to recover fees and expenses "attributable to litigation of the issues raised by [plaintiff's] unsuccessful attempt to obtain class certification. In raising class issues, [plaintiff] was not attempting to determine or enforce contractual rights").

The grant of summary judgment in favor of the trustees as to Count III,[12] and a directed verdict in their favor as to Counts IV[13] and V,[14] supports the conclusion that, as to these counts, the trustees prevailed. See *Bardon Trimount, Inc.* v. *Guyott*, 49

---

[11]Northern, in a passing reference, observes that "[t]he trial court acknowledged the limited nature of the legal claims as to which fees could be awarded . . . correctly conclud[ing] that Section 10.05 did not permit Northern to recover [attorney's] fees expended in connection with Mr. Benson's claim for intentional infliction of emotional distress." The trustees do not counter this assertion.

[12]Count III asserted a claim for wrongful interference with advantageous contractual relationships, based on the alleged conduct on the part of the defendants in denying heat and air conditioning to the premises, engaging in renovations and taking action designed to constructively evict Northern.

[13]Count IV asserted that the defendants engaged in unfair and deceptive acts or practices is in violation of G. L. c. 93A when they wrongfully threatened to evict Northern; denied heat, air conditioning and elevator services to the premises; and interfered with Northern's quiet enjoyment of the premises and with Northern's ongoing business operations.

[14]Count V alleged that the defendants' conduct was designed to constructively evict Northern from the premises.

Mass. App. Ct. at 778-780 (litigant in whose favor judgment enters is "prevailing party"). This is not a situation in which the defense of the additional counts was subsumed in the defense of Count I. Rather, significant and favorable results were achieved for the trustees who, through the expenditure of additional effort, successfully defended against claims that they had failed to provide air conditioning, constructively evicted Northern, interfered with Northern's advantageous relations resulting in lost profits, and engaged in unfair and deceptive acts when they wrongfully threatened to evict Northern.[15]

With respect to Counts III, IV and V, the award appropriately reflects that "the plaintiff has dragged the defendant through a costly and ultimately fruitless exercise." *Bardon Trimount, Inc.* v. *Guyott, supra* at 780, quoting from *Anderson* v. *Melwani*, 179 F.3d 763, 766 (9th Cir. 1999).[16] In addition, the trustees prevailed on their claims for declaratory judgment. There was no error in the award of attorney's fees to the trustees as prevailing parties under the terms of the lease.

c. *Allocation of fees.* Northern further challenges as insufficient the amount of fees it was awarded, and as excessive the

[15]As set forth in her memorandum, the trial judge's award of fees was premised on the trustees' "successfully defending those portions of this litigation which related to the lease," and their affirmative claim that resulted in a declaratory judgment in favor of the trustees, "that the demised premises consist of the net 2100 square foot area at the north end of the third floor." The judge's findings refer specifically to "the wasteful nature of this litigation [as] seen in the plaintiff's insistence that air conditioning was included in the lease," and to Northern's effort "to take a gentlemen's agreement it had between its principal Richard Benson and the original lessor . . . [to use all of the third floor], thus drastically expanding its leasehold on the third floor," beyond the lease terms.

[16]The holding in *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 571 (1997), that "[w]here but one judgment is rendered in the action the prevailing party is the one in whose favor that judgment is entered," is not to the contrary. That case involved entry of one judgment against a defendant on a single count of civil contempt. Although the case also involved a related shareholder derivative action, the matter of fees arose solely in connection with a civil contempt judgment entered against the defendant. *Id.* at 563, 571. There originally were three counts in the contempt complaint, but two were dismissed because the order on which the claims were based had expired prior to the defendant's act, leaving just one count for trial. *Id.* at 571 n.75. The appeal from the contempt judgment was consolidated on appeal with the appeal in the principal case. *Id.* at 565.

amount of the award to the trustees, on the basis that the judge failed to make allocations that identified the amount of fees being awarded with respect to each claim defended or pressed by the parties. Northern complains that while it was penalized for not delineating the time expended in connection with each of its claims, the judge unfairly awarded the trustees one-third of their requested fees, even while citing a similar lack of specificity in the trustees' request. This was not unreasonable, based on the judge's reliance on the pleadings and her firsthand experience at trial. See *Stowe* v. *Bologna*, 417 Mass. 199, 202 (1994) (single justice based determination of reasonable attorney's fees "on his familiarity with the case and the numerous filings with the court"). See also *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629 (1978) ("A judge presiding over the action for which the plaintiff seeks reasonable attorney's fees has ample opportunity to acquire firsthand knowledge" of the relevant factors to be considered in determining a reasonable award). A trial judge has wide discretion in determining the amount of attorney's fees to be awarded to a party. See *Downey* v. *Downey*, 55 Mass. App. Ct. 812, 819 (2002). See also *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 324 (1993).

The judge appropriately relied on factors set out in *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933), to determine what would constitute a reasonable award to each prevailing party.[17] With respect to the award to Northern, the trial judge's memorandum reflects that she based her determination of the plaintiffs' award on her "firsthand observations as well as a review of the docket," and "consider[ed] along the way all of the factors articulated in *Cummings*." As a result of this exercise, the trial judge concluded that much of the time expended by Northern's counsel was in pursuing groundless claims and for work on claims that did not directly arise from

---

[17]*Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933), sets out the following considerations: "the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by the controversy, and the results secured."

the lease. Cf. *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. at 828-829.

In contrast, the trial judge concluded that the trustees were required to expend countless hours defending groundless claims and were subjected to needless costs and fees in connection with the trustees' defense of Northern's lease-related claims. Fees also were incurred in connection with the trustees' substantially successful efforts to obtain a declaratory judgment that enforced their rights under the lease. Northern's reliance on *Ingram* v. *Sonitrol Sec. Sys. of Worcester, Inc.*, 11 Mass. App. Ct. 754, 758 (1981), for the proposition that fees incurred in connection with a declaratory judgment action may not be recovered is misplaced.[18] The judge's determination that approximately one-third of the total cost of services provided by the trustees' attorneys was in connection with litigation of lease-related claims was not plainly wrong.

d. *Prolonging litigation.* Northern claims that the trial judge's finding that Northern had improperly prolonged the litigation was erroneous because both parties were responsible for the delay. The trial judge's findings in this respect are amply supported by the record and are not erroneous.

2. *Dismissal of claim for intentional infliction of emotional distress.* Richard Benson, the individual plaintiff, complains that the judge wrongly dismissed his emotional distress claim in response to the trustees' motion in limine to exclude evidence supporting the claim. Benson challenges both the procedure — arguing that a motion in limine was an improper vehicle for dismissing a claim — and the merits of the judge's action.

Benson's contention that the judge essentially treated the motion in limine as one for summary judgment without providing

[18]In *Ingram* v. *Sonitrol Sec. Sys. of Worcester, Inc.*, 11 Mass. App. Ct. 754, 758 (1981), the defendant had been a lessee under the lease which had terminated. The plaintiff lessor sought declaratory judgment that Sonitrol had exercised its option to renew under the lease. We upheld the dismissal of the complaint on the ground that the lease did not provide an option to renew, but contained a right to extend the lease, and that the tenant, Sonitrol, had become a tenant at will. As such, we concluded that "[t]his case is not one in which Sonitrol is enforcing any obligations owed by Ingram arising under the tenancy." *Id.* at 758.

Benson the opportunity to prepare and submit an opposition is belied by the record. The judge offered Benson ample time and opportunity to respond to the trustees' arguments.[19]

3. *Directed verdict on constructive eviction claim.* At the close of Northern's evidence, the trustees argued that as a matter of law, the disruptions to which the witnesses testified were not sufficiently substantial to constitute constructive eviction.[20] The trial judge allowed the trustees' motion for a directed verdict on Northern's constructive eviction claim. Northern argues that in so doing, the judge ignored evidence supporting reasonable inferences in Northern's favor, and that, at a minimum, the evidence was sufficient to go to the jury.

As with the emotional distress claim, Northern's evidence of misconduct did not rise to the level required to make out a claim for constructive eviction. The landlord's acts must be of a character which "deprive the tenant permanently or for a substantial time of the enjoyment of the property." *Westland Hous. Corp.* v. *Scott,* 312 Mass. 375, 382 (1942) quoting from 3 Williston, Contracts § 891 (rev. ed. 1936). Northern points to the same conduct on the part of the trustees that supported the jury verdict for Northern on its breach of lease claim: periodic heat problems, poor maintenance of common areas, debris from a broken skylight, construction dust and disruption.[21] However, Northern's own witnesses testified to the short duration of these

---

[19]In support of their motion to exclude Benson's evidence of intentional infliction of emotional distress, the trustees offered excerpts from Benson's videotaped deposition, portions of his deposition transcript and his answers to interrogatories. This evidence amply supports the judge's determination that the trustees' conduct did not rise to the level necessary to make out Benson's claim. See *Foley* v. *Polaroid Corp.,* 400 Mass. 82, 99 (1987) (even if intentional or malicious, liability will only be imposed when conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," quoting from Restatement [Second] of Torts § 46 comment d [1965]).

[20]The trustees argued that the dust and noise from the construction on the floor below Northern's leased premises was a temporary condition, that problems with the heat were due to repairs made to the boiler and were also temporary, and that the debris falling from the skylight was minor and did not impair the habitability of the premises.

[21]Northern also cites problems with the elevator, but the jury rejected that claim.

problems[22] and to the fact that most of Northern's business (providing mortgage companies with plot plans and surveys) was conducted by its employees away from the premises.

The law requires more substantial or ongoing interference than was established by this evidence. See, e.g., *Shindler* v. *Milden*, 282 Mass. 32, 33-34 (1933) (landlord's deliberate failure to install a heating system, as promised, rendered the premises unfit for the commercial tenant's restaurant business and constituted a constructive eviction); *Westland Hous. Corp.* v. *Scott*, 312 Mass. at 382 (smoke, soot, and fumes from a defective oil burner entering an apartment over a three-month period, causing illness to the tenant and damage to clothing and furniture, constituted a constructive eviction); *Charles E. Burt, Inc.* v. *Seven Grand Corp.*, 340 Mass. 124, 127 (1959) (landlord's failure to provide any power, electricity, lights, heat, or elevator service to commercial premises constituted a constructive eviction). Compare *Sims* v. *Mason*, 361 Mass. 881 (1972) (failure to provide proper cleaning services, suitable heat and air conditioning, and promised improvements, while breaches of the lease, were not sufficient to make out a constructive eviction).[23]

The judge did not err in allowing the trustees' motion for a directed verdict.

4. *Directed verdict on Northern's claim for lost profits.* Northern sought to recover lost profits allegedly caused by the disruption of its business. To prove its lost profits, Northern offered the testimony of its "controller," Jack Crawley, and introduced Northern's tax returns for the years 1991 through 1997. Crawley testified that Northern had lost clients because of the trustees' breach, but went on to say that he could not "quantify that figure." On cross-examination, Crawly also testi-

---

[22]For example, Rhonda Fitzpatrick, Northern's office manager, testified that the construction lasted only three months. Fitzpatrick, though complaining that the problems with the furnace occurred two or three days a week, also testified that the heat would drop down "into the 60's."

[23]*Winchester* v. *O'Brien*, 266 Mass. 33, 36 (1929), cited in Northern's reply brief in support of its argument that the severity of the trustees' actions should have been decided by the jury, held merely that the tenant may remain in possession and initiate suit; indeed, the court expressly declined to reach the merits of the constructive eviction claim.

fied to the erratic pattern in Northern's revenues over the course of the 1990's, and admitted that the profits for 1995, the year of the alleged breaches, were actually greater than the average percentage of profit for the years 1991 to 1997.

At the end of Crawley's testimony, the trustees moved to strike. The judge, after hearing argument, allowed the motion, stating from the bench that Crawley was not qualified as an expert witness and that he had offered no facts to support his opinion that any lost profits were tied to the trustees' wrongful acts. Subsequently, the judge also allowed the trustees' motion for a directed verdict on the breach of contract claim for lost profits, relying on *Augat, Inc.* v. *Aegis, Inc.*, 417 Mass. 484 (1994).[24]

On appeal, Northern cites *Dyecraftsmen, Inc.* v. *Feinberg*, 359 Mass. 485, 486-487 (1971), for the proposition that "it was for the jury to decide whether a causal connection was to be inferred." In the *Dyecraftsmen* case, the landlord deliberately cut off steam to the premises, causing the tenant's commercial dyeing business to shut down for nine days at the end of 1963, and affecting its production for several weeks after. See *ibid.* The tenant's sales manager "testified to the total amount of a decline in sales to named firms from 1963 to 1964." *Id.* at 488. Here, by contrast, Northern's controller testified to only a vague knowledge of lost clients, specifically adding that he could not "quantify" the loss. Hence, no lost clients were identified, nor were any losses shown to be connected to even the relatively brief periods in 1995 that the disruptions to the leased premises occurred.

The judge was correct in ruling that any finding of causation based on Northern's evidence would be purely speculative.

5. *Air conditioning.* Northern concedes that the lease was silent on the subject of air conditioning. At trial, Northern's

---

[24]"It was not sufficient simply to show Isotronics's projection of its sales and the historic return on total sales. . . . Many factors bear on the financial performance of a company. The plaintiffs had to show the portion of Isotronics's losses, at least in general terms, that was attributable to the defendants' misconduct. . . . Damages for lost profits are recoverable only when proof is made 'with sufficient certainty.' " *Augat, Inc.* v. *Aegis, Inc.*, 417 Mass. 484, 488 (1994), quoting from *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 181 (1979).

counsel represented to the judge that he would offer evidence to show that the lease was ambiguous and that the requirement that the trustees provide electricity was meant to include air conditioning. Northern would, he claimed, present evidence that the air conditioning was physically tied in to the electricity for the building in such a way that providing electricity necessarily required the provision of air conditioning.

No such proof emerged, however. In her memorandum on the defendants' motion for a new trial, the judge detailed the shortcomings with Northern's evidence in this regard. She correctly determined that nothing in Northern's evidence demonstrated that an ambiguity existed as to whether the landlord's obligation to supply electricity under the lease necessarily included air conditioning. The judge also did not err when she ruled that because the lease contained an integration clause and was not ambiguous, the jury could not consider evidence that air conditioning was intended to be included in the lease.

On appeal, Northern relies on *Cooley* v. *Bettigole*, 1 Mass. App. Ct. 515 (1973). We ruled in that case that parol evidence was admissible to show what the parties intended with respect to whether the landlord of an office building could charge tenants' customers for parking, refundable upon validation. See *id.* at 520-521. In *Cooley*, the lease required the landlord to provide, in "the manner customary in office buildings," parking for the tenants and their invitees, without additional charge, while also giving the landlord the exclusive right to regulate and control the parking area. *Id.* at 517. Here, the lease specifically identified electricity and heat as the services to be paid for by the landlord, but made no mention of air conditioning. There was no error.

*Conclusion.* Based on the foregoing, we see no reason to disturb the orders and judgments of the trial court. We decline to award appellate attorney's fees or costs to either party.

*Judgments affirmed.*

*Orders affirmed.*