Rufo, Robert C., J.
This is a contract dispute in which KRR Pembroke, LLC (“KRR Pembroke”) brought suit against Global Data Systems (“Global”) seeking a declaratory judgment stating that Global is obliged to remit rent in the amount set forth in a lease between the parties and that KRR Pembroke is not obliged to permit Global to install a rooftop dish. Global has counterclaimed against KRR Pembroke for breach of contract, negligent misrepresentation, and violation of G.L.c. 93A, Section 2. KRR Pembroke now moves for summary judgment on all claims. After a hearing and review of the record and the parties’ memoranda, for the reasons set forth below, KRR Pembroke’s motion is ALLOWED IN PART, and DENIED IN PART.
BACKGROUND
On or about June 21, 2001, Global entered into a commercial lease with KRR Pembroke to rent space in a multi-tenant commercial building located at 33 Riverside Drive in Pembroke, Massachusetts. Article 1.1 of the lease contains a list of subjects. Preceding the list, Article 1.1 indicates that “(e]ach reference in this Lease to any of the following subjects shall be construed to incorporate the data stated for that subject in this Article.” One such subject is “RENTABLE FLOOR AREA TENANTS SPACE,” which is described as “5,238 Square Feet from August 1, 2001 to December 31, 2002" and ”6,154 Square Feet from January 1, 2003 to July 31,2006." Another subject is “ANNUAL BASE RENT,” which is specified as $102,144 for the *184 initial term, and $129,240 for the latter term. A subsequent amendment to the lease modified the term of the lease and these amounts, but did not alter the space demised or explain how rent was calculated. Finally, article 2.1 of the lease provides a definition of “the Premises,” which reads:
Landlord hereby leases to Tenant and Tenant hereby hires from Landlord, Tenant’s Space in the Building, . . . excluding the common corridors, elevator lobby and toilets located on such floor. Tenant’s Space with such exclusions is hereinafter referred to as “the Premises.”
Immediately following, article 2.2 makes clear that Global has the right to use such common areas, though they are excluded from the definition of “the Premises.”
On or about September 15, 2004, Global hired a consultant to serve as its new chief financial officer. The consultant undertook a review of the company’s books and records. Upon reviewing the instant lease, he questioned the accuracy of the stated square footage. Accordingly, Global hired a professional architect to measure the premises. The architect concluded that the area actually occupied by Global was only 4,415 square feet, hundreds of square feet less than that indicated in article 1.1. The chief executive officer of Global, Joseph Young (“Mr. Young”), subsequently contacted James Rader (“Mr. Rader”), the principal of KRR Pembroke.
Disputing Mr. Young’s assertion that the lease contained a discrepancy, Mr. Rader explained that the square footage indicated in article 1.1 included a pro rata share of common areas appurtenant to Global’s rights in the demised space. Global rejected this explanation, and on October 13, 2004, sent a Chapter 93A demand letter through counsel to KRR Pembroke, seeking reimbursement for overpayment of rent in the amount of $104,564.31. KRR Pembroke responded through counsel on October 21, 2004 in a letter again explaining that:
Rent is established on the basis of rentable floor area, not useable floor area; the latter comprises the premises actually demised under the lease. The former is used to compute base rent and always includes a pro rata portion of the common areas in a multi-tenanted building.
In addition, KRR Pembroke stated that the lease calculated rent without “reference to square footage or a square foot rental rate,” and then referred Global to the integration clause contained in article 8.10 of the lease, which reads, “(t]his Lease contains all of the agreements of the parties with respect to the subject matter thereof and supersedes all prior dealings between them with respect to such subject matter.”
Despite the foregoing dispute, Global continued to pay rent to KRR Pembroke in the amount specified in the lease. Then, in early June of 2005, Global requested permission from KRR Pembroke to install a “non-penetrating mount with dish” on the rooftop of the building. Article 3.1 of the lease requires Global to first obtain KRR Pembroke’s approval for any such “alterations or additions to Tenant’s Space.” The lease mandates that “(s]aid approval shall not be unreasonably withheld,” but also requires that “Landlord shall not be deemed unreasonable for withholding approval of any alterations or additions which (a) involve or might affect any structural or exterior element of the Building . . .” On June 17, 2005, KRR Pembroke sent Global a Consent Agreement outlining the terms under which it would grant Global permission to install the mount and dish. One such term was the waiver of any and all claims Global may have had against KRR Pembroke. Global refuses to agree to this condition. In light of the foregoing disagreements, KRR Pembroke filed a complaint for declaratory judgment on August 1, 2005. In response, Global counterclaimed against KRR Pembroke on August 30, 2005.
DISCUSSION
This court grants summary judgment only when there are no genuine issues of material fact and the record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The moving party bears the initial burden of establishing that there is no dispute of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by negating an essential element of the non-movant’s claim or by demonstrating that the evidence is insufficient to establish the claim. See Kourouvacalis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The opposing party must then establish that a genuine issue for trial exists by setting forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions. See Mass.R.Civ.P. 56(e). If the record so warrants, judgment may pass for the non-moving party “even in the absence of a cross motion for that relief.” Charles Bank Apartments, Inc. v. Boston Rent Control Admin., 379 Mass. 635, 636 n.2 (1980).
In the case at bar, KRR Pembroke moves for summary judgment on all claims before the Court. These claims include: abatement of rent (Complaint Count I, Counterclaim Count I), the denial of consent to install the rooftop dish (Complaint Count II, Counterclaim Count I), negligent misrepresentation (Counterclaim Count III), the alleged violation of G.L.c. 93A, Section 11 (Counterclaim Count II), and KRR Pembroke’s right to attorneys fees (Complaint Count III). Each claim is respectively addressed below.
A. Abatement of Rent
In construing the meaning of the terms of a contract or lease, “(j)ustice, common sense, and the probable intent of the parties guide the court’s construction of the agreement.” Kotler v. Spaulding, 24 Mass.App.Ct. *185 515, 517 (1987); accord New England Found. Co. v. Commonwealth, 327 Mass. 587, 596 (1951). “[L]anguage, background, and purpose” are essential considerations. Speers v. H.P. Hood, Inc., 22 Mass.App.Ct. 598, 600 (1986). If the language used is unambiguous, the “agreement must be enforced according to its terms.” Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992); accord Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970). Such terms are to be interpreted as a whole, see Chicago Bridge & Iron Co. v. Certain Underwriters at Lloyd’s, London, 59 Mass.App.Ct. 646, 656 (2003), but “(a]n omission to specify an agreement in a written lease is evidence that there was no such understanding.” Worcester-Tatnuck Square CVS, Inc. v. Kaplan, 33 Mass.App.Ct. 499, 503 (1992), citing Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701 (1964); see, e.g., N. Assocs, Inc. v. Kiley, 57 Mass.App.Ct. 874, 887 (2003). Moreover, when a lease is unambiguous and contains an integration clause, a party to the lease may not rely on evidence extraneous to the four comers of the lease to claim rights under the lease. Compare N Assocs., Inc., 57 Mass.App.Ct. at 887 (disallowing extrinsic evidence) with Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997) (allowing extrinsic evidence to cure ambiguity despite integration clause). “If a contract, in this case a lease, is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment.” Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002).
In the case at bar, the parties’ lease is unambiguous as to the premises demised and the amount of rent due. Viewing the lease as a whole, article 1.1 first defines the term “RENTABLE FLOOR AREA TENANTS SPACE” as “5,238 Square Feet from August 1, 2001 to December 31, 2002" and ”6,154 Square Feet from January 1, 2003 to July 31, 2006." The term “tenant’s space” is then incorporated into the definition of “the Premises” in article 2.1. There, “the Premises” is defined as follows:
Tenant’s Space in the Building, . . . excluding the common corridors, elevator lobby and toilets located on such floor. Tenant’s Space with such exclusions is hereinafter referred to as “the Premises.”
Thus, article 2.1 explicitly distinguishes the term “Tenant’s Space” from the term “Premises,” the former consisting of 5,238 and subsequently 6,154 square feet, the latter consisting of the same less the common areas. Contrast Siegel v. Terminal Realty Corp., 350 Mass. 779, 780 (1966) (finding ambiguity where lease and floor plan failed to distinguish usable space from rentable space). Consequently, the lease unambiguously indicates that “the Premises” consists of less than 5,238 and 6,154 square feet.
As to the “ANNUAL BASE RENT,” article 1.1 addresses this term as well. It reads as follows:
Annual Monthly
Period Base Rent Base. Rent
August 1, 2001 to December 31, 2002 $102,144 $ 8,512
January 1, 2003 to July 31, 2006 $129,240 $10,770
There is no additional explanation in the lease regarding how rent is determined; the lease is entirely silent on that subject. Because there is no mention of any other agreements or conditions regarding the amount of rent due or how rent is calculated, the omission is evidence that there were no supplementary understandings between the parties on that issue. The integration clause in article 8.10 reinforces this conclusion. Accordingly, the lease is unambiguous as to the amount of rent due. For this reason, and in light of the integration clause in article 8.10, the Court declines to permit Global to introduce extrinsic evidence to claim a right to abatement of rent under the lease. The lease must simply be enforced according to its terms. The amount of rent due is the fixed amount specified in the parties’ written agreement.
B. Denial of Consent to Install the Dish
Again, if the language used in a lease agreement is unambiguous, the “agreement must be enforced according to its terms.” Schwanbeck, 412 Mass, at 706. Moreover, when a lease is unambiguous and contains an integration clause, a party to the lease may not rely on evidence extraneous to the four corners of the lease to claim additional rights under the lease. See N. Assocs., Inc., 57 Mass.App.Ct. at 887.
Here, the dish Global sought to install would be mounted on the rooftop of the building at 33 Riverside Drive. Article 3.1 of the parties’ lease requires Global to obtain KRR Pembroke’s approval for any such “alterations or additions to Tenant’s Space,” but provides that “(s]aid approval shall not be unreasonably withheld.” It is clear, however, that the place where Global sought to install the dish, i.e., the rooftop, lies outside of “Tenant’s Space.” The rooftop is neither part of the demised premises nor part of the appurtenant common areas. Consequently, that clause is inapposite. A subsequent clause in article 3.1 is on point. It states that “Landlord shall not be deemed unreasonable for withholding approval of any alterations or additions which (a) involve or might affect any structural or exterior element of the Building ...” The rooftop is an exterior element of the building, and a dish clearly “might affect” that element. Because the foregoing lacks any ambiguity, the lease “must be enforced according to its terms.” Thus, in light of the wide latitude afforded KRR Pembroke under the lease as to the exterior of the building, KRR Pembroke need not allow Global to install the rooftop dish.
C. Negligent Misrepresentation
“In order to recover for negligent misrepresentation a plaintiff must prove that the defendant (1) in the course of his business, (2) supplies false information *186 for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information.” Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass.App.Ct. 15, 19-20 (1998); see also RESTATEMENT (SECOND) OF TORTS §552 (1977). Such a claim “is ordinarily one for a jury, unless the undisputed facts are so clear as to permit only one conclusion.” Id. at 20. However, the statute of limitations on negligent misrepresentation claims requires that they “be commenced only within three years next after the cause of action accrues.” G.L.c. 260, §2A. As a general rule, tort actions accrue at the time the plaintiff is injured. See Joseph A. Fortin Constr., Inc. v. Mass. Hous. Fin. Agency, 392 Mass. 440, 442 (1984); Cannon v. Sears, Roebuck & Co., 374 Mass. 739, 741 (1978). Nonetheless, accrual may be tolled pursuant to the discovery rule “where a misrepresentation concerns a fact that was ‘inherently unknowable’ to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive.” Albrecht v. Clifford, 436 Mass. 706, 714 (2002), quoting Patsos v. First Albany Co., 433 Mass. 323, 328 (2001); see also Taygeta Corp. v. Vartan Assocs., Inc., 436 Mass. 217, 229 (2002) (the “discovery rule . . . tolls the statute of limitations until a plaintiff knows, or reasonably should have known, that it has been harmed or may have been harmed by the defendant’s conduct”).
In Albrecht v. Clifford, the Albrechts purchased a single-family home from Clifford and moved into the residence in 1993. Albrecht, 436 Mass. at 707-08. In 1996, the Albrecht’s neighbor, whose home was also built by Clifford, informed the Albrechts that his fireplaces and chimneys were defective. Id. at 708. Accordingly, the Albrechts hired a mason to inspect their own fireplaces. Id. The inspection revealed that they, too, were defective in that their size violated state building code. Id. Thus, in 1998, the Albrechts filed suit against Clifford. Id. Holding that the size of the fireplaces was not “inherently unknowable,” the Supreme Judicial Court quoted with approval the trial court’s finding;
[T]he defects alleged were readily seen on an inspection conducted sometime after December of 1996. Such an inspection equally as well could have been conducted in 1993 when the Albrechts moved in. Similarly, the mere use of at least some of the nine fireplaces should have signalled a problem, if there was one. And perhaps most obviously, charges that the hearths were the wrong size or the fireboxes not deep enough presented situations that were in plain sight and discoverable by simple measurements.
Id. at 715. Accordingly, the Court affirmed the trial court’s allowance of summary judgment on the Albrechts’ negligent misrepresentation claim, among others. Id. at 716.
The case at bar is similar to Albrecht. Global entered into a commercial lease with KRR Pembroke in June of 2001, and occupied the space soon thereafter. In September of 2004, Global hired a new chief financial officer who questioned the accuracy of the square footage stated in its lease with KRR Pembroke. A professional architect measured the premises in that same time frame and concluded that the area actually occupied by Global was only 4,415 square feet. On October 13, 2004, Global sent KRR Pembroke a 93A demand letter, and on August 1, 2005, Pembroke filed a complaint for declaratory judgment. Global counterclaimed on August 30, 2005, approximately four years after occupying the premises. However, like the fireplaces in Albrecht, the size of Global’s premises could easily have been ascertained when Global took up occupancy. Consequently, the size of the premises was not inherently unknowable; it was in plain sight. Therefore, any potential cause of action accrued when Global moved into the premises in 2001. That being over three years ago, Global’s negligent misrepresentation claim is now time-barred.
D. G.L.c. 93A, §11
The withholding of a benefit to which another has a contractual right in order to extract unrelated concessions gives rise to a claim under Chapter 93A for “unfair or deceptive trade practices.” See Frank J. Linhares Co., Inc. v. Reliance Ins. Co., 4 Mass.App.Ct. 617, 623 (1976); Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985). Here, KRR Pembroke refused to grant Global permission to install a dish on the rooftop of its building at 33 Riverside Drive unless Global agreed to waive any and all claims Global may have had against it. This circumstance is insufficient to sustain a claim under Chapter 93A because KRR Pembroke did not deny Global any benefit to which it had a contractual right. As discussed above, the parties’ lease gave KRR Pembroke wide latitude as to additions or alterations to the exterior of the building. The relevant clause reads, “[landlord shall not be deemed unreasonable for withholding approval of any alterations or additions which (a) involve or might affect any structural or exterior element of the Building . . .” Accordingly, Global had no contractual right to install the dish. Consequently, KRR Pembroke’s use of the issue as a negotiating point does not constitute “unfair or deceptive trade practices,” and summary judgment is appropriate on Global’s Chapter 93A claim.
E. Attorneys Fees
The traditional American rule “teaches that attorneys fees are not ordinarily recoverable in the absence of statute, court rule, enforceable contract or stipulation providing therefore [sic].” Bournewood Hosp., Inc. v. Mass. Comm’n Against Discrimination, 371 Mass. 303, 308 (1976). Here, KRR Pembroke and Global *187 agreed, as set forth in article 5.13 of the parties’ lease, that “Tenant covenants during the Term and such further time as Tenant occupies any part of the Premises ... As Additional Rent, to pay all reasonable costs, counsel and other fees incurred by Landlord in connection with the successful enforcement by Landlord of any obligations of Tenant under this Lease.” Such an agreement is enforceable. See, e.g., Northern Assocs., Inc., 57 Mass.App.Ct. at 874. Nonetheless, it is undisputed that Global was current on all rental payments and had made no attempt to install the dish on the rooftop of 33 Riverside Drive. Therefore, KRR Pembroke’s action to enforce the parties’ lease is premature. Global is and has been in compliance with all the terms of the lease, the 93A letter notwithstanding. For these reasons, KRR Pembroke is not entitled to its reasonable attorneys fees under the terms of the parties’ lease.
CONCLUSION
For the foregoing reasons, KRR Pembroke’s Motion for Summary Judgment is DENIED as to its claim for attorneys fees in Count III of its Complaint, but ALLOWED as to all remaining counts, that is, Counts I and II of the Complaint and Counts I, II and III of Global’s Counterclaim.