SULIEYMAN OMAR & another[1] *vs.* RAYMOND L. SABBAG
& others.[2]

No. 07-P-938.

Norfolk. March 7, 2008. - July 11, 2008.

Present: McHUGH, BROWN, & KATZMANN, JJ.

*Fraud. Consumer Protection Act,* Attorney's fees. *Practice, Civil,* Attorney's fees, Costs. *Negotiable Instruments,* Note.

Where this court was unable to determine whether a trial court judge correctly applied the terms of a promissory note requiring that the note holder be paid for all of its costs and expenses in enforcing the note, including reasonable attorney's fees, this court vacated the judge's award of fees and costs to the note holder and remanded the matter for further findings. [202-203]

CIVIL ACTION commenced in the Superior Court Department on October 29, 2002.

A motion for a partial summary judgment was heard by *Patrick F. Brady,* J., and the case was tried before *Charles J. Hely,* J.

*Harry C. Mezer* for the defendants.

*Paul W. Morenberg* for the plaintiffs.

BROWN, J. This case arises from a business deal, completed in 1999, when Abysina, Ltd., and its principal, Sulieyman Omar ("plaintiffs" or "buyers"), purchased a coffee shop business from the sellers, Coast to Coast Coffee, Ltd. (Coast), and its principals, Raymond Sabbag and Patrick Doyle (collectively, "defendants").

In 2002 the plaintiffs commenced an action in the Superior Court against the defendants, raising claims of fraud, violation of G. L. c. 93A, and misrepresentation. The defendants, in turn, counterclaimed, seeking to recover a debt due on a promissory

---

[1]Abysina, Ltd. The record appendix fails to include a copy of the complaint.

[2]Patrick Doyle and Coast to Coast Coffee, Ltd. (Coast). See note 1, *supra.*

note. Amendments to the complaint followed, with the plaintiffs adding new claims, the details of which are not pertinent to this appeal.

After the case had been narrowed as a result of a partial summary judgment ruling, the matter was tried to a Superior Court jury, who heard the plaintiffs' fraud and c. 93A claims, and the defendants' counterclaim to collect a debt due under a promissory note made by the plaintiffs in connection with the sale.

As memorialized by the verdict slip, the jury determined the defendants had not only made a misrepresentation in the course of the business deal but had also run afoul of c. 93A.[3] That said, the jury found that the plaintiffs had not been harmed as a result of the defendants' conduct.

Separately, on the defendants' counterclaim, the jury found that the subject promissory note had not been the product of a fraud committed by the defendants or of a c. 93A violation. The jury determined the plaintiffs owed the defendants the sum of $146,022 under that note. No attack is made upon the jury's findings or resulting judgment as to the various claims pressed by the parties below.

Acting on the defendants' request for attorney's fees and costs,[4] the trial judge awarded $70,341 to the defendants for such fees and costs.

The trial judge, however, refused to award additional fees to the defendants, insofar as their request related to expenses incurred in connection with defending against the plaintiffs' fraud

---

[3]On the record, we cannot discern with any precision the nature of the wrongful misrepresentation. The defendants say that certain "gift-basket sales had been overstated."

[4]Defendant Coast requested counsel fees in the amount of $211,022. The plaintiffs opposed that request on the ground that a "major portion of Coast's attorney['s] fees [was] attributable [to] the defense of the fraud and Chapter 93A claims rather than efforts to collect the note." Coast's fee request is not included in the record. The note provides in pertinent part: "If the Note Holder requires immediate payment in full . . . , the Note Holder shall have the right to be paid for all of its costs and expenses in enforcing this Note, including reasonable attorney['s] fees."

A related mortgage instrument, by way of contrast, furnished the mortgage holder the right to "all costs, attorney['s] fees, charges and expenses incurred up to the time of payment" "[i]f foreclosure proceedings have been begun hereunder."

and c. 93A claims.[5] (The jury determined that the plaintiffs' fraud and c. 93A claims as related to the plaintiffs' purchase of the business were well-founded, on the evidence, even though the jury concluded that no harm was suffered by the plaintiffs as a result of this wrongful conduct.)[6]

The defendants contend the amount of the fee award was not consistent with the terms of the promissory note and governing legal standards for such fee awards.

Here, the trial judge concluded that the defendants' counsel fees incurred in connection with the enforcement of the note could "fairly be separated" from the fees incurred by them in defending against the plaintiffs' fraud and c. 93A claims related to the purchase of the business. Ultimately, the trial judge determined that the $70,341 sum constituted a "reasonable" fee award to the defendants, under the terms of the note and related guaranty. The underlying note provided for "reasonable attorney['s] fees" "in enforcing [the] note." The judge fairly decided that counsel fees attributable to the defense against the plaintiffs' fraud and c. 93A claims as related to the purchase of the business were not intrinsic to the defendants' collection claim on the note. This determination is supported by the meager record on appeal. It is apparent from the verdict slip that the jury were asked to make two discrete findings pertaining to fraud and c. 93A violations — one concerning whether the defendants committed fraud or violated c. 93A in the sale of the business (to which the jury responded "yes," but found no harm), and the second specifically concerning whether "the defendant obtain[ed] the . . . note from the plaintiffs by fraud

---

[5]The trial judge reasoned: "Coast's attorney['s] fees for enforcing the note and its attorney['s] fees for defending against the plaintiffs' claims *can fairly be separated*" (emphasis added). The judge emphasized:

> "The defendants faced a significant risk that the plaintiffs would prevail on the Chapter 93A claims. An adverse finding on those claims would result in mandatory attorney['s] fees for the plaintiffs as well as the risks of large actual damages and doubling or tripling of the actual damages. The stakes were high. Plaintiffs' counsel was aggressive in pressing the fraud and Chapter 93A claims."

[6]The trial judge accordingly denied a motion of the defendants for sanctions (G. L. c. 231, § 6F) and ruled that the plaintiffs' fraud and c. 93A claims were not frivolous. The defendants do not contest that ruling.

or by a Chapter 93A violation" (to which the jury responded "no"). The fact that the jury answered one question as to c. 93A and fraud "yes," and the other "no," is some evidence that the two matters were not inextricably intertwined. Compare *Northern Assocs.* v. *Kiley*, 57 Mass. App. Ct. 874, 880-881 (2003).

However, the judge made no findings as to the second question, which asked the jury to determine, with respect to the defendants' counterclaim on the note, "Did the defendant obtain the . . . note from the plaintiffs by fraud or by a Chapter 93A violation?" This aspect of the trial on fraud and c. 93A could not be separated from the expense of enforcing the note, as "the successful resistance of these claims was intrinsic to [collecting] on the note . . . ." *Covich* v. *Chambers*, 8 Mass. App. Ct. 740, 752 (1979). Compare *Penney* v. *First Natl. Bank of Boston*, 385 Mass. 715, 723 (1982). As the judge made no mention of this aspect of the case in his memorandum and order on attorney's fees, we are unable to determine whether he correctly applied the terms of the note requiring that the note holder be paid for "all of its costs and expenses in enforcing this Note, including reasonable attorney['s] fees." A remand is therefore necessary.[7]

The award of fees and costs in the judgment entered September 7, 2006, is vacated, and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[7]As to the reasonableness of the fees charged by defense counsel, the trial judge, citing *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 326 (1993) (applying "lodestar" method), found that counsel was "effective and efficient," that his hourly rate was "reasonable in view of his high level of skill, judgment and experience," and that the hours billed "were not excessive." This determination has not been challenged on appeal.