· Peter L. Albrecht & another[1] *vs.* Alfred G. Clifford.

Essex. January 8, 2002. - May 7, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Contract,* Building contract, Warranty, Sale of real estate. *Real Property,* Sale.
    *Practice, Civil,* Summary judgment, Statute of limitations. *Limitations,*
    *Statute of. Fraud. Deceit. Consumer Protection Act,* Warranty. *Warranty.*

Discussion of cases outside Massachusetts that have abandoned the doctrine
    of caveat emptor and adopted implied warranties of habitability or good
    workmanlike quality in the sale of newly constructed houses. [708-710]
This court concluded that an implied warranty of habitability arises out of a
    contract for the sale of a newly constructed residence by a builder-seller
    and set forth the factors that a buyer will have to show to establish a
    breach of the implied warranty. [710-712]
In an action alleging claims against a home builder-seller for fraud and deceit,
    negligent misrepresentation, and violation of G. L. c. 93A arising from the
    sale of a newly constructed single-family home with a number of fireplaces
    that the buyer, several years later, learned were defective, the applicable
    statutes of limitations were not tolled and thus expired, where the buyers
    failed to meet their burden of demonstrating that, in the exercise of reason-
    able diligence, they should not have known of the defects; further, even as-
    suming a cause of action for the violation of an implied warranty of habit-
    ability had been stated, the buyers were barred from pursuing such a claim
    because of their failure to raise it within the three-year statute of limitations.
    [712-716]
In an action alleging breach of contract claims against a home builder-seller ·
    arising from the sale of a newly constructed single-family home, the judge
    correctly entered summary judgment in favor of the defendant on one
    count because it was based on a paragraph of the purchase and sale agree-
    ment that did not survive the buyers' acceptance of the deed to the property
    but merged with it, and correctly dismissed a second count as barred by
    the parties' own limitation period as set forth in the express warranty
    contained in the purchase and sale agreement. [716-718]

Civil action commenced in the Superior Court Department on
February 6, 1998.

The case was heard by *Allan van Gestel,* J., on a motion for
summary judgment.

[1]Margaret Page Albrecht.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James W. Matthews* for the plaintiffs.

*William H. Sheehan, III*, for the defendant.

*Benjamin Fierro, III*, for Home Builders Association of Massachusetts, Inc., amicus curiae, submitted a brief.

CORDY, J. In 1993, Peter L. Albrecht and Margaret Page Albrecht bought a newly constructed single-family home with nine fireplaces from Alfred G. Clifford, an architect and general contractor. Several years later, the Albrechts learned that there were defects in the fireplaces and chimneys in another house that Clifford had built in their neighborhood. Consequently, they retained an inspector who found similar defects in the Albrechts' home. The Albrechts filed a complaint in the Superior Court asserting claims against Clifford for breach of contract (Counts I and II), breach of an implied warranty that the residence was constructed in a good and workmanlike manner (Count III), fraud and deceit (Count IV), negligent misrepresentation (Count V), and violation of G. L. c. 93A (Count VI).[2] A judge in the Superior Court allowed Clifford's motion for summary judgment on all the Albrechts' claims. They appealed. We transferred the appeal to this court on our own motion to consider whether an implied warranty arises out of a contract for the sale of a newly constructed residence by a builder-vendor.[3] We conclude that there is such a warranty but affirm the entry of summary judgment for the defendant on statute of limitations grounds. We affirm the judge's summary judgment rulings on the Albrechts' contract claims on other grounds.

1. *Background.* In March, 1992, Clifford began construction of a single-family home on property he owned in Newbury (residence). In September, 1993, the Albrechts decided to buy the residence, and with the assistance of experienced and capable counsel, negotiated the terms of the sale with Clifford, including certain express warranties. On September 16, 1993, the Albrechts and Clifford executed a standard form purchase and sale agreement (agreement). Exhibit A to the agreement set

[2]The Albrechts also sued their realtor, who is not a party to this appeal.

[3]We acknowledge the amicus brief of the Home Builders Association of Massachusetts, Inc.

forth the express warranties that Clifford and the Albrechts agreed would survive the delivery of the deed for one year, including: "all systems, e.g., plumbing, electrical, heating, fireplaces and chimneys etc., will work properly"; "the entire premises is built according to municipal and state regulations, including building, zoning, health, safety, electrical and plumbing codes"; and "the premises have been constructed in a good and workmanlike manner."[4] However, this express warranty provision required the Albrechts to give Clifford written notice of any defects within one year of the delivery of the deed. On October 26, 1993, the Albrechts bought the residence from Clifford for $595,000. They moved in on December 23, 1993, but never used any of the fireplaces.

In December, 1996, the Albrechts were told by a neighbor that the fireplaces and chimneys in their home, also built by Clifford, were defective. The Albrechts hired a mason whose inspection of the home led him to conclude that the Albrechts' fireplaces and chimneys were also defective. The Albrechts sent two letters to Clifford asking him to repair the defects, but Clifford and the Albrechts were unable to agree on a solution. On February 6, 1998, the Albrechts filed this lawsuit. During the litigation that ensued, the Albrechts retained an expert who concluded that the chimneys, fireboxes, dampers, flues, and smoke chambers were "not constructed in a good and workmanlike manner" and did not comply with the State building code.[5]

2. *Implied warranty of habitability.* In 1964, the Supreme Court of Colorado was the first court in the country to abandon the doctrine of caveat emptor and hold that a builder-vendor of a completed residential home impliedly warrants that it complies with applicable building code requirements, is built in a

---

[4]There were additional representations and warranties in Exhibit A that survived the delivery of the deed for an unspecified length of time, including that there was no urea formaldehyde foam insulation, asbestos, or chlordane in the residence; that there were no underground storage tanks on the property; that there were no tenants or other people in possession of the residence; that there were no known mechanics or other workmen's liens on the property; and that Clifford was not subject to certain Federal income tax withholding provisions.

[5]The judge noted that "[Clifford and the realtor] are not in agreement that all of the chimney and fireplace defects claimed exist or even that they are all 'defects.' "

workmanlike manner, and is suitable for habitation. *Carpenter*
v. *Donohoe*, 154 Colo. 78, 83-84 (1964). Since the decision in
*Carpenter*, the majority of jurisdictions have similarly
abandoned the doctrine of caveat emptor,[6] and adopted implied
warranties of habitability or good workmanlike quality in the
sale of newly constructed houses.[7] Although we have abandoned
the doctrine of caveat emptor in the context of residential leases

---

[6]"Caveat emptor, which traditionally has applied to sales of real estate,
developed at a time when a buyer and seller were in equal bargaining
positions. They were of comparable skill and knowledge and each could
protect himself in a transaction." *Chandler* v. *Madsen*, 197 Mont. 234, 238
(1982). However, "[i]n the sale of new residential dwellings, the doctrine of
caveat emptor has properly been eroded by the winds of contemporary
realities." *Atherton Condo. Apartment-Owners Ass'n Bd. of Directors* v.
*Blume Dev. Co.*, 115 Wash. 2d 506, 517 (1990). See *David* v. *B & J Holding
Corp.*, 349 So. 2d 676, 678 (Fla. Dist. Ct. App. 1977), quoting *Gable* v.
*Silver*, 258 So. 2d 11, 17 (Fla. Dist. Ct. App. 1972) (abandoning doctrine
"brings the law much closer to the realities of the market for new homes than
does the anachronistic maxim of caveat emptor"); *Hines* v. *Thornton*, 913
S.W.2d 373, 375 (Mo. Ct. App. 1996), quoting *Smith* v. *Old Warson Dev. Co.*,
479 S.W.2d 795, 801 (Mo. 1972) ("The caveat emptor rule as applied to new
houses is an anachronism patently out of harmony with modern home buying
practices").

[7]The expansion of implied warranties has resulted in a blurring of the
"[t]he distinction, if any, between an implied warranty of habitability and an
implied warranty of good quality and workmanship . . . in decisional law
throughout the country." *Council of Unit Owners of Breakwater House
Condominium* v. *Simpler*, 603 A.2d 792, 795 (Del. 1992). A number of courts
use both "habitability" and "good workmanlike quality" to describe the scope
of the implied warranty. See *Roper* v. *Spring Lake Dev. Co.*, 789 P.2d 483,
485 (Colo. Ct. App. 1990) (contractual responsibilities of builder of new
house include buyer's right to home that is built in "workmanlike manner and
one that is suitable for habitation"); *Elden* v. *Simmons*, 631 P.2d 739, 741
(Okla. 1981) ("the builder-vendor of a new home impliedly warrants that the
new home is or will be completed in a workmanlike manner and is or will be
reasonably fit for occupancy as a place of abode"); *Elderkin* v. *Gaster*, 447
Pa. 118, 128 (1972) ("builder-vendor impliedly warrants that the home he has
built and is selling is constructed in a reasonably workmanlike manner and
that it is fit for the purpose intended — habitation").

Other courts have limited the warranty to one of "habitability." Some of
those courts define "habitability" as substantial compliance with all building
and housing codes. *Carpenter* v. *Donohoe*, 154 Colo. 78, 83-84 (1964). Others
define it in more general terms. See *Goggin* v. *Fox Valley Constr. Corp.*, 48
Ill. App. 3d 103, 106 (1977) (new home must keep out elements and provide
inhabitants with reasonably safe place to live, without fear of injury to person,
health, safety, or property); *Aronsohn* v. *Mandara*, 98 N.J. 92, 104 (1984)

and held that such leases carry with them an implied warranty of habitability,[8] until today, we have not adopted such a warranty in the sale of new homes.

There are a number of important policy considerations that have led other jurisdictions to adopt the type of implied warranty urged on us in this case. An implied warranty assures that consumers receive that for which they have bargained, an objectively habitable home, see *Miller* v. *Cannon Hill Estates, Ltd.*, 2 K.B. 113, 120-121 (1931); it protects purchasers from structural defects that are nearly impossible to ascertain by inspection after the home is built, see *Christensen* v. *R.D. Sell Constr. Co.*, 774 S.W.2d 535, 538 (Mo. Ct. App. 1989); and it imposes the burden of repairing latent defects on the person who has the opportunity to notice, avoid, or correct them during the construction process, see *Duncan* v. *Schuster-Graham Homes, Inc.*, 194 Colo. 441, 444 (1978). See also *Hines* v. *Thornton*, 913 S.W.2d 373, 375 (Mo. Ct. App. 1996) ("The cause of action is directed to structural defects that a builder-vendor has the opportunity to observe but fails to correct; defects that, through the construction process, become latent and not subject to discovery by inspection").

These sound policy reasons lead us to adopt an implied warranty of habitability that attaches to the sale of new homes by

(habitability "synonymous with suitability for living purposes; the home must be occupiable").

Courts have defined "good workmanlike quality" as "the quality of work that would be done by a worker of average skill and intelligence." *Nastri* v. *Wood Bros. Homes*, 142 Ariz. 439, 444 (Ct. App. 1984). In *Dixon* v. *Mountain City Constr. Co.*, 632 S.W.2d 538, 541 (Tenn. 1982), the court recognized an implied warranty that "the workmanship and materials used by the builder-vendor in the construction of a dwelling will meet the standard of the trade for homes in comparable locations and price range."

[8]In *Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184 (1973), we held that "in a rental of any premises for dwelling purposes, under a written or oral lease, for a specified time or at will, there is an implied warranty that the premises are fit for human occupation." *Id.* at 199. The landlord impliedly warrants that there are no "latent [or patent] defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable." *Id.*, quoting *Kline* v. *Burns*, 111 N.H. 87, 92 (1971).

builder-vendors in the Commonwealth.[9] The adoption of such a warranty is also consistent with the protections that our law affords consumers in other contexts. See *Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184 (1973) (implied warranty of habitability in residential leases); *George* v. *Goldman*, 333 Mass. 496 (1956) (implied warranty in construction contracts to do workmanlike job and use reasonable skill). See also G. L. c. 106, § 2-314 (implied warranty of merchantability for goods). Its purpose is to protect a purchaser of a new home from latent defects that create substantial questions of safety and habitability. While the scope of this warranty must be left largely to case-by-case determination, a home that is unsafe because it deviates from fundamental aspects of the applicable building codes, or is structurally unsound, or fails to keep out the elements because of defects of construction, would breach the implied warranty we adopt today.

This implied warranty is independent and collateral to the covenant to convey, and survives the passing of title to and taking possession of the real estate. It cannot be waived or disclaimed, because to permit the disclaimer of a warranty protecting a purchaser from the consequences of latent defects would defeat the very purpose of the warranty.[10]

This implied warranty does not make the builder an insurer against any and all defects in a home, impose on the builder an obligation to deliver a perfect house, or protect against mere defects in workmanship, minor or procedural violations of the applicable building codes, or defects that are trivial or aesthetic. Its adoption is not intended to affect a buyer's ability to inspect a house before purchase, to condition the purchase on a satisfactory inspection result, or to negotiate additional express warranties.

To establish a breach of the implied warranty of habitability a plaintiff will have to demonstrate that (1) he purchased a new

[9]We are not called on here to decide whether a second or subsequent purchaser may state a claim for breach of this implied warranty against the builder within the applicable statute of limitations.

[10]The implied warranty that we establish here does not apply to the purchase or sale of unfinished homes, where the parties may choose to waive or disclaim all warranties.

house from the defendant-builder-vendor; (2) the house contained a latent defect; (3) the defect manifested itself only after its purchase; (4) the defect was caused by the builder's improper design, material, or workmanship; and (5) the defect created a substantial question of safety or made the house unfit for human habitation. In addition, the claim must be brought within the three-year statute of limitations and the six-year statute of repose set forth in G. L. c. 260, § 2B.[11]

The motion judge concluded that the Albrechts' claim for relief under a theory of implied warranty failed because no such cause of action had been recognized in Massachusetts. Having recognized such a warranty, we now apply the principles just announced to the record on summary judgment.

The Albrechts are purchasers of a newly constructed home from a builder-vendor, and the defects about which they complain were discovered after they purchased the residence. In addition, based on their expert's affidavit, the Albrechts have adequately demonstrated, for purposes of summary judgment,[12] that there are genuine issues of disputed fact about whether the

---

[11]General Laws c. 260, § 2B, provides: "Action of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner." This statute is appropriately applied to an implied warranty of habitability because such a warranty is an obligation imposed by law and is "imposed apart from and independent of promises made and therefore apart from any manifested intention of parties to a contract." W.L. Prosser & W.P. Keeton, Torts § 92, at 656 (5th ed. 1984). Compare *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 822 (1986) ("Because the standard of performance is set by the defendant['s] promises, rather than imposed by law, an express warranty claim is and generally has been understood to be an action of contract, rather than of tort"), with *Klein* v. *Catalano*, 386 Mass. 701, 720 (1982) (G. L. c. 260, § 2B, applies to implied warranty by architect to exercise required standard of care because to hold otherwise would frustrate legislative purpose of "limit-[ing] the liability of architects, engineers, contractors, or others involved in the design, planning, construction, or general administration of an improvement to real property").

[12]The standard of review of a ruling on a motion for summary judgment is "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled

defects were caused by the builder's improper design and workmanship, and whether they created a substantial question of safety.[13]

Whether the Albrechts can adequately demonstrate that the defects were "latent" is more questionable. Latent defects are conditions that are hidden or concealed, and are not discoverable by reasonable and customary observation or inspection. Black's Law Dictionary 429, 887 (7th ed. 1999). The defects in this case, however, were in some measure readily observable. In concluding that the fireplaces and chimneys were defective, the Albrechts' expert did not have to dismantle them or any other part of the residence. He merely made observations and measurements of the materials and components (e.g., hearths, fireplace boxes, dampers, flues, smoke chambers) that were readily accessible.[14] Admittedly, some of the observations (e.g., smoke chambers, flues, and chimney interiors) were more difficult than others (hearths, fireplace boxes, and dampers), and were made with the assistance of video equipment. Whether the discovery and correction of the obvious defects would have led to the discovery of those which were more difficult to observe is a close question on summary judgment, but is one that we need not resolve. We conclude, as the motion judge did, that even assuming a cause of action for the violation of an implied warranty, the Albrechts were barred from pursuing this claim because of their failure to raise it within the three-year statute of limitations.

3. *Statute of limitations.* The Albrechts bought the residence on October 26, 1993, moved in on December 23, 1993, and filed their complaint on February 6, 1998, more than four years

to a judgment as a matter of law." *Miller* v. *Mooney*, 431 Mass. 57, 60 (2000). "For a grant of summary judgment to be upheld, the moving party must establish that there are no genuine issues of material fact, and that the non-moving party has no reasonable expectation of proving an essential element of its case." *Id.*

[13]Based on observations and measurements of the nine fireplaces and two chimneys, the expert rendered his opinion that "the numerous defects and code deviations are significant and potentially hazardous."

[14]The expert concluded, among other things, that the combined depths of the fireboxes and hearths were too small, the dampers were too small, the flue liners were too small, and the walls around these components were not thick enough, all in violation of the State building code.

later. The motion judge concluded that, absent tolling of the applicable statutes of limitations, the claims for fraud and deceit (Count IV), negligent misrepresentation (Count V), and G. L. c. 93A (Count VI) were time barred.[15] He also concluded that the statutes were not tolled in the circumstances of this case. We agree.

To defeat Clifford's motion for summary judgment, the Albrechts sought to invoke the discovery rule. "The rule, which operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured, may arise in three circumstances: where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 328 (2001), citing *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 631-632 (1997).

We treat as a single argument the Albrechts' contention on appeal that there was no reason that they "knew or should have known" about the alleged defects, and the motion judge's conclusion that the alleged defects were not "inherently unknowable." See *Williams* v. *Ely*, 423 Mass. 467, 473 n.7 (1996), and cases cited ("inherently unknowable" standard is no different from and is used interchangeably with the "knew or should have known" standard). "[T]o the extent that any misrepresentation concerns a fact which was 'inherently unknowable' by the plaintiffs at the time it was made and at the time of the sale . . . a cause of action for deceit in the sale of real estate accrues when a buyer learns of the misrepresentation or when the buyer reasonably should have learned of the misrepresentation." *Friedman* v. *Jablonski*, 371 Mass. 482, 485-486 (1976). "Inherent unknowability is not a fact, but rather a conclusion to be drawn from the facts." *Melrose Hous. Auth.* v. *New Hampshire Ins. Co.*, 402 Mass. 27, 31-32 n.4 (1988) (question of inherent unknowability is properly for court to answer in

[15]The judge applied the three-year statute of limitations in G. L. c. 260, §§ 2A, 2B, to Counts IV and V and the four-year statute of limitations in G. L. c. 260, § 5A, to Count VI.

case tried to master and without jury). Plaintiffs who assert that their cases should not be barred by the statute of limitations have the burden of demonstrating that they did not know of the defect within the statute of limitations and that "in the exercise of reasonable diligence, they should not have known." *Friedman* v. *Jablonski, supra* at 487.

The Albrechts claim that the purported defects were inherently unknowable and that they did not have any reason to suspect that there was a problem until December, 1996, when neighbors told them about their own problems with their fireplaces and chimneys. The motion judge concluded from the undisputed facts that the Albrechts' claims were not "inherently unknowable":

> "[T]he defects alleged were readily seen on an inspection conducted sometime after December of 1996. Such an inspection equally as well could have been conducted in 1993 when the Albrechts moved in. Similarly, the mere use of at least some of the nine fireplaces should have signalled a problem, if there was one. And perhaps most obviously, charges that the hearths were the wrong size or the fireboxes not deep enough presented situations that were in plain sight and discoverable by simple measurements."

Whether the defects were inherently unknowable or not, we conclude that on the record of undisputed facts, the Albrechts cannot meet their burden of demonstrating that "in the exercise of reasonable diligence, they should not have known" of them. *Friedman* v. *Jablonski, supra.* It was not reasonable as a matter of law for the Albrechts neither to inspect[16] nor to use the fireplaces when they knew the express warranty on the fireplaces and chimneys, which they had negotiated, lasted only one year. This conclusion is also implicit in the judge's conclusion that the defects were not "inherently unknowable" in the circumstances of this case. The statutes of limitations were therefore

---

[16]The Albrechts contracted for a prepurchase inspection of the residence that was limited to "readily accessible areas of the building" and "to visual observations only." The inspection report specifically stated that: "The report is not a compliance inspection or certification for past or present governmental codes or regulations of any kind." The inspection did not require the inspector to ignite a solid fuel fire or observe the interior of the fireplaces or flues.

not tolled and the Albrechts' claims for fraud and deceit, negligent misrepresentation, and violation of G. L. c. 93A were filed after the applicable statutes of limitations had expired. For the same reason, the three-year statute of limitations provided in G. L. c. 260, § 2B, expired on the claim for breach of the implied warranty of habitability announced in today's decision.

4. *Breach of contract claims (Counts I & II).* The Albrechts allege in Count I of their complaint that Clifford breached the terms of the purchase and sale agreement because "the Residence delivered to the Albrechts at or about the time of delivery of the deed was not completed in accordance with the requirements of the contract and is in violation of certain building laws." In Count II of their complaint, the Albrechts allege that Clifford breached the terms of the express warranty contained in Exhibit A to the purchase and sale agreement by failing "to complete the construction of the Residence in a good and workmanlike manner and in accordance with all applicable Massachusetts building laws and regulations." The judge entered summary judgment on Count I because it was based on a paragraph of the purchase and sale agreement (paragraph 9) that did not survive the Albrechts' acceptance of the deed but merged with it. The judge dismissed Count II as barred by the parties' own limitation period as set forth in the warranty itself. We agree with both of these conclusions.

Acceptance of a deed ordinarily merges all obligations in the purchase and sale agreement, except for those specified in the deed itself. *McMahon* v. *M & D Bldrs., Inc.,* 360 Mass. 54, 59 (1971). Consistent with this rule of merger, the agreement in this case expressly states that: "The acceptance of a deed by the BUYER . . . shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed."

There is an exception to this general rule when a home builder agrees to undertake an obligation, such as constructing or repairing a building on the property, that is in addition or collateral to the conveyance of the deed. See *McMahon* v. *M & D Bldrs., Inc., supra* at 60 ("the plaintiffs' acceptance of the deed operated as a merger or waiver only to the extent of precluding any

claim that the title which the defendant conveyed did not satisfy the requirements of the agreement").[17]

The Albrechts contend that paragraph 9 of the agreement created an obligation that was collateral to the conveyance of the deed and, as such, constituted a contractual warranty that the residence would comply with the applicable building codes. This contention is incorrect. Paragraph 9 of the agreement states that:

> "Full possession of [the residence] . . is to be delivered at the time of the delivery of the deed, said premises to be then (a) fully completed in accordance with the requirements hereof, and (b) not in violation of any building, planning, health . . . or zoning laws . . . . The Buyer and its consultants shall be entitled personally to inspect said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this or any other clause hereof."

This paragraph is not a warranty. Rather, it describes some of the conditions on which the Albrechts could have refused to purchase the residence. The agreement provided that if Clifford had been unable to provide good title, convey or deliver possession of the residence, or "if at the time of the delivery of the deed the premises do not conform with [the agreement's] provisions" — including paragraph 9 — he had up to thirty days to use reasonable efforts to remedy any of these problems. If he failed to fix any problems within that time, the agreement would have become void. We agree with the judge that Count I of the Albrechts' complaint fails because paragraph 9 is not a contractual warranty that survived the Albrechts' acceptance of the deed.

The warranties that were to survive the acceptance of the

---

[17]See also *Holihan* v. *Rabenius Bldrs., Inc.*, 355 Mass. 639, 642 (1969), quoting *Lipson* v. *Southgate Park Corp.*, 345 Mass. 621, 625-626 (1963) ("The deed merely conveyed the premises but it did not constitute performance of an agreement which provided for the erection of a building 'in a careful, workmanlike, and substantial manner' and the use of 'new and . . . best' materials in its construction"); *Lipson* v. *Southgate Park Corp.*, *supra* at 625 ("A jury could find that an agreement, containing detailed plans and specifications for the erection of a dwelling, is not ordinarily included in a deed and that the acceptance of the deed was only conclusive of the [conveyance of land]").

deed were identified in Exhibit A of the agreement. However, those warranties expressly survived the acceptance of the deed for only one year. The Albrechts did not notify Clifford of their problems with the chimneys and fireplaces until May 20, 1997, more than three years after they accepted the deed. We therefore agree that Count II, breach of the express warranties in Exhibit A of the agreement, is barred by the parties' own limitation period.

*Judgment affirmed.*