Chin, Richard J., J.
INTRODUCTION
The Plaintiffs Peter and Elizabeth Cook (the “Cooks” or “Plaintiffs”) claim that the Defendants, Old New England Homes, Inc., and Richard P. Cullen (“Defendants”), committed breach of contract, breach of warranty, breach of implied warranty of habitability, and violation of G.L.c. 93A. The Plaintiffs allege that the Defendants failed to finish construction and repair *505 defects in the home as promised. The Defendants argue that the Plaintiffs waived any claims under the purchase and sale agreement by accepting the deed, that the items listed in the demand letter are not covered by the limited warranty, that the breach for implied warranty is barred by the statute of limitations, and that the Plaintiffs’ claims under G.L.c. 93A are unsupported by the allegations and barred by the statute of limitations. The Defendants also counterclaim, alleging a violation of the Massachusetts Civil Rights Act (“MCRA”) and unjust enrichment. For the following reasons, the Defendants’ motion for summary judgment is ALLOWED with respect to Counts 1 through 5 and DENIED with respect to Count 1 of the Counterclaim.

BACKGROUND

In May 2001, the Plaintiffs purchased a home at 33 Mounce Farm Way in Marshfield from the Defendants. In July 1999, Old New England began construction of the property, a 6,000-square-foot federal-style home, and the property was later placed on the market for $1,150,000. The Cooks first viewed the home with a real-estate broker in January 2001. After the viewing, Mr. Cook, who held real estate including two commercial properties and a residence in Marshfield, contacted Old New England directly and proposed a reduction in the purchase price roughly equivalent to the amount of the broker’s fee. Old New England agreed to deal with the Cooks directly. They were interested in this particular property because it featured a first-floor in-law suite for Mr. Cook’s elderly mother, who lived with them at the time. Without reading the document or consulting an attorney, Mr. Cook signed the Purchase and Sale Agreement (“P&S”) with Old New England on May 4, 2001. The P&S set a purchase price of $1,035,5000 and a closing date for May 29, 2001.
Although not identical to the Greater Boston Real Estate Board’s (“GBREB’s”) Standard Form P&S, the P&S incorporated its language regarding a pre-closing inspection for the purpose of identifying building code and zoning issues. Paragraph 9 of the P&S, “Possession & Condition of Premises,” provides in relevant part: “Full possession of said premises is to be delivered at the time of the delivery of the deed, said premises to be then (b) not in violation of said building and zoning laws . . . The BUYER shall be entitled to an inspection of said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.” According to the P&S, Old New England would resolve any pre-closing issues. If defects were not adequately remedied, the Cooks had the option either to cancel the sale and receive a full refund of their deposit or accept the deed to the properly in its existing condition, thereby waiving building code and zoning issues. Paragraph 13 of the P&S states: “The acceptance of a deed by the BUYER . . . shall be deemed to be a full performance and discharge of every agreement and obligation therein contained or expressed . . .’’
Old New England provided an express “Limited Warranty,” which was attached to the P&S and covered only “usual maintenance items” arising within one year from closing. The Limited Warranty was restricted to: water seepage in the basement; defects in the roof, plumbing system, electrical system, and heating and cool system; and disintegration of the driveway. Items excluded from the Limited Warranty included: defects in appliances; damages due to ordinary wear and tear; defects common to the materials; condensation; damage to the roofs; stoppage of plumbing; landscaping beyond initial seeding; damage to countertops; hairline cracks in the plaster; shrinkage of hardwood floors; swelling of doors; cracking of foundation; dents in the woodwork; twisting of studs, joints, and beams; normal fading of paint; defects in items installed by buyer; work performed by buyer; and items supplied by buyer, and consequential or incidental damages.
The Cooks did not hire a professional home inspector to conduct a pre-closing inspection.
Instead, with the help of Glen Prince, they prepared a preliminary punchlist prior to closing.
Based on the Marshfield Building Inspector’s report, the Town issued Old New England a certificate of occupancy for the property on May 23, 2001. At the closing on May 29, 2001, the Cooks accepted a quitclaim deed from Old New England.
After the closing, the Cooks generated additional punch lists — five in all — that identified issues with the property. None of these problems was contained in the preliminary punchlist. The first four post-closing lists were created with Prince’s help and were submitted to Old New England on June 1, July 24, August 10, and August 15, 2001, respectively. Among the issues contained in the post-closing punchlists which Old New England remedied was repainting the entire interior of the home. Old New England hired a third party and paid for the repainting.
On August 24, 2001, Mr. Cook presented Old New England with a fifth punchlist, labeled “inspection report,” which identified 63 items. After receiving the list, the building inspector concluded that there were no unsafe conditions on the property at that time. Old New England informed Mr. Cook that in the interest of resolving their dispute, it would address many of the issues identified in the fifth punchlist. In response, Mr. Cook threatened to have Cullen’s builder’s license revoked. The Defendants allege that these threats were made on several occasions to Cullen and also to foreman Howard Auen. Old New England addressed most of the items on the fifth punchlist at a cost of more than $60,000. Nicholas Antoniou performed most of these improvements, and Mrs. Cook initialed the item next to the punchlist after it was completed.
*506 On May 17, 2005, the Cooks presented the Defendants with a demand letter for reimbursement of $50,437.66 for nine improvements to the property: (1) construction management, (2) code review, (3) chimney extension and damper repair, (4) interior painting, (5) irrigation work, (6) rework of the gutter, (7) lawn and landscaping, (8) rework of the cupola, and (9) coat of asphalt in the driveway. Old New England replied to the demand letter on June 15, 2005, denying any obligation to pay for this work but offering $5,000 to resolve the dispute. The Cooks replied with a second demand letter from another law firm on November 1, 2005. Old New England reasserted its position in its response on November 11, 2005.
On November 21, 2005, the Cooks filed a five-count verified complaint against Old New England and Cullen individually, alleging breaches of contract (Counts 1 and 2), breach of warranty (Count 3), breach of implied warranty of habitability (Count 4), and violation of G.L.c. 93A (Count 5). The Defendants filed an answer and counterclaims for violation of the MCRA and for unjust enrichment on December 22, 2005.
During the time the lawsuit was brewing, the Cooks placed their property on the market for $1,350,000 in June 2005. Dennis and Kelley Crowley submitted an offer of $1,300,000 for the home five days after it was listed. The Cooks accepted the offer and did not disclose the pending legal action against Old New England. The Crowleys hired a home inspector who identified items to be fixed prior to closing. These repairs cost the Cooks $4,637.12. The closing occurred on the scheduled date — August 12, 2005.

DISCUSSION

Summary judgment is appropriate where there are no material facts in dispute and, as a result, the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party “assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue . . .” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial is entitled to summary judgment if it demonstrates “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party may show the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). “(T]he opposing party cannot rest on his other pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). All facts are viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992).
Acceptance of a deed merges all prior covenants and representations of the seller and discharges all obligations contained in the purchase and sale agreement, except those specified in the deed itself. Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 441-42 (1975); Pybus v. Grasso, 317 Mass. 716, 717 (1945). Paragraph 13 of the P&S unequivocally states that the buyer’s acceptance of the deed constitutes full performance and extinguishes all obligations contained within the P&S. The Cooks were entitled to an inspection prior to delivery of the deed. At that time, Old New England was responsible for making the necessary repairs. Old New England addressed every item on the only punchlist submitted prior to closing. If the Cooks were dissatisfied with the property after these repairs, they could have requested a full refund of their deposit; however, they chose to accept the deed and the property in its existing condition. Old New England’s obligations to make future repairs to the property based on the P&S agreement were extinguished when the Cooks waived any claims by accepting the deed. For these reasons, summary judgment enters on Counts 1 and 2 for the Defendants.
The claims alleged by the Plaintiff in Count 3 are not covered by the limited warranty. The limited warranty was restricted to certain problems for a period of one year: water seepage in the basement; defects in the roof, plumbing system, electrical system, and heating and cool system; and disintegration of the driveway. Items listed in the Plaintiffs’ demand letter— construction management, code review, extension of the chimney, damper repair, and reworking the cupola — were not listed. The limited warranty also specifically excluded other items, including interior painting, landscaping, and roofing and drainage, listed in the demand letter. Finally, the issue of a new coat of asphalt for the driveway was barred by the one-year restriction stated in the warranty. Because the limited warranty did not include the improvements the Cooks demanded, summary judgment enters for the Defendants on Count 3 of the complaint.
While the aforementioned claims do not survive the delivery of the deed, the Plaintiffs’ fourth count, breach of the implied warranty of habitability, does. This warranty, however, does not “impose on the builder an obligation to deliver a perfect house” or make actionable defects which are “trivial or aesthetic.” Albrecht v. Clifford, 436 Mass. 706, 711 (2002). To establish a breach, the Plaintiffs must prove that (1) they purchased a new house from the Defendant-builder-vendor; (2) the house contained a latent defect; (3) the defect manifested itself only after the purchase; (4) the defect was caused by the builder’s improper, design, material, or workmanship; and (5) the defect created a substantial question of safety or made the house unfit for human habitation. Id. at 711-12. The Plain *507 tiffs meet the first criterion; the others are more difficult for them to prove. First, the defects which they cite in their demand letter are not “latent.” Latent means “hidden or concealed, not discoverable by reasonable and customary observation or inspection.” Id. at 713 (citation omitted). In his own deposition, Mr. Cook admitted that he “thought that these items would have come up.” Second, none of the items concerns the safety or habitability of the building. The Cooks did not vacate the property because of these defects, and the problems were not serious enough to mention to the Crowleys when they sold the house to them. Finally, this claim is barred by the three-year statute of limitations, pursuant to G.L.c. 260, §2B. The date of the last inspection report was August 23, 2001; the Cooks did not file suit until November 21, 2005, more than four years later. For these reasons, summary judgment enters for the Defendants on Count 4.
Finally, the Plaintiffs allege that the Defendants committed unfair and deceptive business practices in violation of G.L.c. 93A. The record does not support this claim. The Defendants addressed every issue raised by the Plaintiffs in the only punchlist submitted prior to closing. In the interest of appeasing of the Cooks, Old New England remedied a significant number of the issues, although they were not obligated to do so. Based on these good faith efforts, there is no evidence that the Defendants acted fraudulently or in bad faith when dealing with the Cooks. Moreover, this claim is barred by the four-year statute of limitations. See Clark v. Mead Realty Group, Inc., 67 Mass.App.Ct. 491, 499 (2006) (93A claim time-barred when filed more than four years after alleged wrong); Kirley v. Kirley, 25 Mass.App.Ct. 651, 655 (1988) (ongoing injuries following alleged wrongdoing did not toll statute of limitations). Because the Plaintiffs cannot sustain a 93A claim, summaiy judgment enters in favor of the Defendants on Count 5.[3]
The Defendants counterclaim that Mr. Cook violated the MCRA by stating that he would use his political influence to have Cullen’s builder’s license revoked. To establish a violation of the MCRA, the plaintiffs in counterclaim must prove that (1) their exercise of enjoyment of rights secured by the Constitution or laws of the either the U.S. or Massachusetts, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation, or coercion. Buster v. George W. Moore, Inc., 438 Mass. 635, 644 (2003). Economic coercion, standing alone, is actionable under the MCRA. Id. at 648. An objective standard applies — whether a reasonable person in the victim’s circumstances would be threatened, intimidated, or coerced by the defendant’s conduct. See Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474-75 (1994). This determination requires a finding of fact, and a decision on summaiy judgment is not appropriate in this case. See Tortora v. Inspector of Buildings of Tewksbury, 41 Mass.App.Ct. 120, 123-24 (1996).[4]

ORDER

For the foregoing reasons, it is hereby ordered that the Defendants’ motion for summaiy judgment is ALLOWED with respect to Counts 1-5 and DENIED with respect to Count 1 of the counterclaim.

Based on the rulings supra, there is no need to consider whether Cullen can be sued individually.

Relevant law quoted by the Plaintiffs is inaccurate. In Bell v. Mazza, 394 Mass. 176 (1985), the Court held that the allegations in the complaint that abutters opposing their neighbors’ construction of a tennis court were engaged in a joint venture for the purpose of interfering with the neighbors’ properly rights were sufficient to overcome a motion to dismiss. The Plaintiffs erroneously cite the following: “Allegations which merely indicate that a party will petition for the redress of grievances, absent extraordinary circumstances, are not sufficient to state a claim under G.L.c. 12, § 111.” The sentence actually reads: “It is important to note, however, that allegations which merely indicate that a defendant petitioned for the redress of grievances, absent extraordinary circumstances, are not sufficient to state a claim under G.L.c. 12, §111.”