Tucker, Richard T., J.
INTRODUCTION
This is an action in which the plaintiffs, Donald and Nancy Driscoll, seek damages from the defendants, Toll MA. Limited Partnership, Toll Brothers, Inc., and Huckins Farm Limited Partnership, in connection with the defendants’ sale and construction of the plaintiffs’ single-family residence in North Grafton, Massachusetts. The matter is before the court on the defendants’ motion for partial summary judgment. For the reasons set forth below, the motion is ALLOWED in part and DENIED in part.
FACTUAL BACKGROUND
The following facts are drawn from the summary judgment record and viewed in the light most favorable to the plaintiffs, as the nonmoving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
On March 23, 2003, the plaintiffs entered into a purchase and sale agreement with the defendants (the “Agreement”) for the construction of a new single-family residence at 30 Morgan Drive in North Grafton, Massachusetts, for a total purchase price of $721,321.00.[3] The plaintiffs read the Agreement before executing it on March 29, 2003. Paragraph 10 of the Agreement is titled “Limited Warranty” and provides in relevant part:
SELLER’S LIABILITY UNDER THE HOME WARRANTY OR THIS AGREEMENT OR ARISING IN ANY WAY OUT OF THE CONSTRUCTION, DELIVERY, SALE OR CONDITION OF THE PREMISES SHALL BE LIMITED TO THE REPAIR OF THE PREMISES IN ACCORDANCE WITH THE HOME WARRANTY STANDARDS. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY SPECIAL, EXEMPLARY, INDIRECT OR CONSEQUENTIAL DAMAGES. SELLER HEREBY SPECIFICALLY EXCLUDES ANY OTHER WARRANTIES OF MERCHANTABILITY, HABITABILITY, WORKMANSHIP AND FITNESS FOR A PARTICULAR PURPOSE.
The Home Warranty is a ten-year limited warranty that establishes the terms and conditions upon which the defendants are obligated to repair any deficiencies in materials or workmanship where the defects fail to conform with the standards set forth in the “Standards of Performance” section of the Home Warranty. Prior to the plaintiffs’ purchase of their new home, they had been assured that it would be placed at an elevation similar to that of a model home they had viewed, that it would be built using “quality materials,” and that it would be an “Energy Star” home.
Shortly after the plaintiffs moved into their new home, sometime around February 25, 2004, they discovered water entering into the basement. In March 2004, Nancy Driscoll contacted the defendants to complain of the water. After the plaintiffs complained of water in their basement a second time, sometime in 2004, the defendants installed a sump pump in the plaintiffs’ basement.
In Januaiy 2005, the plaintiffs reported to the defendants that water continued to enter the basement from outside. In June 2005, the defendants installed a drainage system, which purportedly discharged water into a diywell located on the plaintiffs’ property. In October 2005, there were heavy rain storms for several days in North Grafton. During the storms, water poured into the basement through the foundation wall. The plaintiffs reported that a power outage had caused the sump pump to stop working, resulting in two inches of water in the basement. The water was quickly drained when power was restored to the sump pump.
In late-October 2005, the defendants removed the first drainage system on the plaintiffs’ property and installed a new one. The plaintiffs were still dissatisfied with the defendants’ efforts to remedy their drainage issues, and in Januaiy 2007 they retained a structural engineer to survey their house and property. According to the structural engineer, the basement slab was built 3.5 feet lower than proposed on the lot grading plan given to the plaintiffs prior to construction, and the drainage system was installed *346 improperly. He also reported structural deficiencies, opining that some of the wood and steel beams had load-bearing capacities that were below the minimum amounts required by the Massachusetts State Building Code.
On February 14, 2007, the plaintiffs sent to the defendants a Chapter 93A demand letter that described the drainage issues and highlighted various violations of the Massachusetts State Building Code. They filed an initial complaint in this action on February 21, 2007. The demand letter referenced the structural engineer’s report with respect to the plaintiffs’ drainage and structural problems. The defendants responded in March 2007 by offering to repair any alleged defects pursuant to the terms of the Home Warranty or, in the alternative, to tender a cash payment in the amount of $10,000.00. The parties disagreed as to the appropriate corrective measures, and the cash offer was only 6 percent of the structural engineer’s estimated cost of repair. The plaintiffs declined to accept the defendants’ Chapter 93A response, and instead amended their complaint in this action to allege a violation of Chapter 93A.[4]
In April 2007, while litigation was pending, Donald Driscoll intentionally shut off the sump pump overnight during a heavy rainstorm to record video of water infiltration in the basement for purposes of litigation. In August 2008, the defendants offered to hardwire the sump pump and to install a battery backup to protect against power outages, but the plaintiffs did not allow the defendants to perform the proposed work. In December 2008, the plaintiffs experienced a power outage during a major ice storm, which caused the sump pump to stop working and allowed water to enter the basement.
On March 13, 2009, the plaintiffs filed a second amended complaint in this action, expanding upon their prior complaint to allege additional drainage and structural defects in the construction of their home. The defendants seek summary judgment as to the following counts of the second amended complaint: Count I (breach of contract); Count IV (breach of the implied warranty of merchantability); Count V (breach of the implied warranty of fitness for a particular purpose); Count VI (breach of express warranty); Count VII (negligence); CountVIII (misrepresentation); and Count IX (violations of G.L.c. 93A).
DISCUSSION
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party-bears the burden of affirmatively showing that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass, at 17. The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Bailey, 386 Mass, at 370-71.
The defendants contend that they are entitled to summary judgment on the counts for breach of contract and express warranty because the Agreement provides that the Home Warranty is the exclusive remedy for defects in the construction of the plaintiffs’ home. They contend further that the plaintiffs cannot maintain an action based on breach of contract or warranty because they have not complied with their own contractual obligation to provide written notice of the defects and an opportunity for the defendants to repair them. Alternatively, the defendants submit that they have complied with any and all obligations under the Agreement and the Home Warranty by adequately addressing all problems of which they had proper notice.
1. Breach of Contract (Count I) and Express Warranty (Count VI)
There is a genuine issue of material fact as to whether the new home that the defendants delivered to the plaintiffs was so defective and nonconformant to project specifications as to constitute a material breach of the Agreement. Although the defendants suggest that any deviation from project specifications was permissible and de minimis, the plaintiffs’ expert’s affidavit raises an issue of material fact as to whether the project modifications were so excessive as to be unreasonable. Furthermore, there is a dispute as to whether the home was properly constructed in accordance with the Agreement, which incorporates by reference the standards set forth in the Home Warranty.
There is also a genuine issue of material fact as to whether the defendants’ performance of the required repairs under the Limited Warranty was so deficient as to constitute a material breach of the Agreement and the express warranties therein, thereby excusing the plaintiffs from continuing to resort to the Limited Warranty as their sole remedy for the defects in their home. See New England Power Co. v. Riley Stoker Corp., 20 Mass.App.Ct. 25, 30-31 (1985) (“[W]hen there are a warranty and a promise to repair, the remedy of first resort is the promise to repair. If that promise is not fulfilled, then the cause of action is the underlying breach of warranty”). In particular, there is a material dispute as to whether the defendants *347 satisfied their obligations under the Limited Warranty when they installed a sump pump to remedy the basement flooding, which was allegedly attributable to the fact that the defendants had set the house’s foundation too low and failed to install a proper drainage system. Notwithstanding the defendants’ suggestion that the plaintiffs have not experienced any flooding since October 2005, the plaintiffs do not agree that the defendants’ remedial measures have corrected their water problems, and their expert’s affidavit refutes the defendants’ position. Therefore, summary judgment is inappropriate as to Counts I and VI.
2.Breach of Implied Warranties of Merchantability (Count IV) and Fitness for a Particular Purpose (Count V)
The defendants also seek summary judgment as to Counts IV and V, which allege breaches of the implied warranties of merchantability and fitness for a particular purpose, respectively. Although the defendants correctly point out that Massachusetts has not explicitly created an implied warranty of merchantability or good workmanship for new home buyers, the Supreme Judicial Court appears to have left open the possibility that such implied warranties might attach to new homes. See Berish v. Bornstein, 437 Mass. 252, 263-64 (2002) (citing with approval Florida district court case extending implied warranties of fitness and merchantability to sale of new condominiums); Albrecht v. Clifford, 436 Mass. 706, 709 n.7 (2002) (noting that the distinction between implied warranties of habitability and good quality and workmanship has been blurred in jurisdictions that have abandoned the doctrine of caveat emptor for the sale of new homes). This point is academic, however, as the plaintiffs concede in their opposition to the motion for summary judgment that their counts for breach of the implied warranties of merchantability and fitness for a particular purpose are, in substance, claims for breach of the implied warranty of habitability. Summary judgment shall therefore be granted as to Counts IV and V. The defendants have not moved for summary judgment as to Count III, which specifically alleges breach of the implied warranty of habitability, and the plaintiffs may proceed on that theory at trial.[5]
3.Negligence (Count VII)
The defendants contend that the plaintiffs’ negligence claim is barred by the economic loss doctrine, which provides that “purely economic losses are unrecoverable in tort and strict liabilify actions in the absence of personal injury or property damage.” FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993). Economic loss includes “damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property.” Berish, 437 Mass. at 267, quoting Marcil v. John Deere Indus. Equip. Co., 9 Mass.App.Ct. 625, 630 n.3 (1980). “The economic loss doctrine applies not only to the purchase and sale of products but also to claims of negligent design and installation in a newly constructed home.” Id. at 267-68, citing McDonough v. Whalen, 365 Mass. 506, 514 (1974).
Here, the plaintiffs have alleged that the negligent construction of their home has damaged personal property in their basement and has contributed to large accumulations of water on their property. Accordingly, the plaintiffs have alleged sufficient non-economic losses to establish recoverable damages under their negligence theory, and the defendants are not entitled to summary judgment on this ground. See Aldrich v. ADD, Inc., 437 Mass. 213, 222 (“[Wjhere the pecuniary losses sustained by a plaintiff result from physical harm to property proximately caused by a defendant’s alleged negligence, such plaintiff has a right to recovery”).
Alternatively, even if the plaintiffs had alleged only economic losses, such losses would be recoverable to the extent that they were incurred as a result of an actionable negligent misrepresentation. See Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass.App.Ct. 15, 20 (1998).
4.Misrepresentation (Count VIII)
The defendants seek summary judgment on Count VIII of the second amended complaint on the grounds that the plaintiffs cannot demonstrate that the defendants made any actionable misrepresentations.[6] In order to recover for negligent misrepresentation, the plaintiffs must prove that the defendants (1) in the course of their business, (2) supplied false information for the guidance of the plaintiffs (3) in their business transactions, (4) causing and resulting in pecuniary loss to the plaintiffs (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information. Nota Constr. Corp., 45 Mass.App.Ct. at 19-20. A claim for negligent misrepresentation is ordinarily one for a juiy, unless the undisputed facts are so clear as to permit only one conclusion. Id. at 20.
The plaintiffs have alleged that the defendants made several false representations upon which the plaintiffs detrimentally relied in purchasing their home. Specifically, they allege that the defendants’ project manager assured them that “your home will be elevated similar to the model home.” They also allege that they were misled by various advertising materials promoting the quality and energy-efficiency of the defendants’ luxury homes.[7]
With respect to the defendants’ alleged representation that the plaintiffs’ home “would be elevated similar to the model home,” the defendants suggest that such a statement is at best promissory in nature. While “false statements of opinion, of conditions to exist in the future, or of matters promissory in nature *348 are not actionable” as misrepresentations, Yerid v. Mason, 341 Mass. 527, 530 (1960), statements about future events concerning the conduct of a business “may be actionable as misrepresentations when the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentation relate” (internal quotations omitted). Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass.App.Ct. 582, 601 n.45 (2007), quoting Millen Indus., Inc. v. Flexo-Accessories Co., 5 F.Sup.2d 72, 74 (D.Mass. 1998).
Under the circumstances, the court concludes that whether the defendants’ alleged representations are actionable is a question of fact for the juiy.
5. Count IX (Violations of G.L.c. 93A)
The defendants seek summary judgment to the extent that the plaintiffs failed to detail certain defects giving rise to their Chapter 93A claim in their February 2007 demand letter. The defendants submit that certain structural defects that the plaintiffs raised in their second amended complaint were discovered after the plaintiffs sent their initial demand letter to the defendants, and that the plaintiffs are therefore foreclosed from using these additional allegations as bases for their Chapter 93A claim.
The court concludes that the drainage and structural defects alleged in the February 2007 demand letter were set forth with sufficient specificity to put the defendants on notice of the unfair and deceptive practices alleged. See G.L.c. 93A, §9(3); Simas v. House of Cabinets, Inc., 53 Mass.App.Ct. 131, 139 (2001) (“A demand letter under G.L.c. 93A, §9, must. . . reasonably describe the unfair or deceptive act or practice relied upon and the injury suffered”); Piccuirro v. Gaitenby, 20 Mass.App.Ct. 286, 292 (1985) (demand letter must “reasonably set forth the acts relied on and was sufficient to give the defendant an opportunity to review the facts and the law to see if the requested relief should be granted and to make a reasonable settlement offer so as to limit damages”). Although the plaintiffs did not make special reference in their initial demand letter to each particular structural defect that they now allege, the case law does not require such specificity with respect to claims of additional defects arising out of a cause of action that has already been reasonably described. Cf. Bressel v. Jolicoeur, 34 Mass.App.Ct. 205, 211 (1993) (plaintiffs Chapter 93A claim based on defendants’ alleged misrepresentation foreclosed where demand letter made “no reference to this particular act”). Here, the demand letter reasonably described the alleged unfair and deceptive acts, and the court finds no basis for requiring serial demand letters to account for each new defect that arises from the same conduct.[8]
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motion for partial summary judgment be ALLOWED as to Counts IV and V, and that the motion otherwise be DENIED.

he sale price for the new home was $561,975.00, but additional items and extras brought the total to $721,321.00.

 0n May 7, 2009, the plaintiffs sent the defendants another demand letter that referenced additional structural defects that their structural engineer identified upon further inspection.

 To establish a breach of the implied warranty of habitability, the plaintiffs will be required to prove that (1) they purchased a new house from the defendant builder-vendors; (2) the house contained a latent defect; (3) the defect manifested itself only after its purchase; (4) the defect was caused by the builder’s improper design, material, or workmanship; and (5) the defect created a substantial question of safety or made the house unfit for human habitation. See Albrecht, 436 Mass. at 711-12.

Although the complaint alleges that the defendants’ misrepresentation was either intentional or negligent, the count was not pled with sufficient particularity to sustain a claim for fraud or intentional misrepresentation. Accordingly, the court treats the claim as one for negligent misrepresentation.

The defendants contend that the advertising materials upon which the plaintiffs rely cannot form the basis of an actionable misrepresentation claim because they are dated after the complaint was filed in this case. There is a factual dispute as to whether the defendants also made these representations in advertising materials that they provided to the plaintiffs prior to their purchase of the home. Moreover, the plaintiffs’ affidavits allege that the defendants specifically represented that the new home would be Energy-Star-compliant, but that it failed to obtain Energy-Star certification.

In light of its analysis, the court does not address whether the plaintiffs’ updated May 7, 2009 demand letter is sufficient on the theory that it relates back to the February 2007 letter, which is the only demand letter referenced in the second amended complaint.